68 U.S. 43
 17 L.Ed. 609
 1 Wall. 43
 COMMANDER-IN-CHIEF.
 December Term, 1863
 
 68 U.S. 43
 17 L.Ed. 609
 1 Wall. 43
 COMMANDER-IN-CHIEF.
 December Term, 1863
 APPEAL from a decree of the Circuit Court of the United States for the Southern District of New York in a cause of collision, the case being thus:
 La Tourette & Butler, appellees in the case, were owners of the schooner William Clark, and filed their libel in the District Court of the United States for that district, alleging, among other things, that on the 26th of January, 1860, the schooner of the claimants, called the Commander-in-chief, while their schooner lay safely at anchor to the north and east of Little Egg Harbor, and about a half a mile from the New Jersey shore, came down, under full sail, and ran into her, cutting her through, abreast of the main chains. The allegation was, that the William Clark sank within fifteen minutes after the collision, and the claim was for a total loss both of the vessel and the cargo. The collision occurred about ten o'clock in the evening. The libellants alleged that it was a clear, moonlight night; that their schooner was properly anchored, and had a competent watch on deck, and a bright light set in the rigging, and that the collision occurred in consequence of the negligence, mismanagement and unseamanlike conduct of those in charge of the vessel of the respondents, and without any fault on the part of those in charge of their own vessel.
 The answer of the claimants, in general terms, denied the material matters alleged in the libel. A separate denial of each article was interposed, and the substance of the defence was, that the collision, if it occurred at the time and place alleged in the libel, was occasioned through the fault of the officers and crew of the vessel of the libellants; the respondents alleging, in the general terms quoted, that the vessel of the libellants 'lay in an improper manner and in an improper place, without a light or other necessary precautions, and that the collision, so far as their vessel was concerned, was unavoidable.'
 Testimony was taken by both parties. It showed that the schooner of the libellants, bound from Indian River, in Delaware, to the city of New York, anchored a mile or two to the northward of Little Egg Harbor light (a place where vessels frequently sail), in consequence of the severity of the cold, and because it was blowing so heavily that those in charge of her did not deem it safe to proceed on the voyage. It was proved, however, that the anchorage was not an improper one, and that a number of vessels were anchored still further in the general track, towards the south. The master of the Commander-in-chief swore it was a moonlight night-very cold. 'There was a vapor on the water. Anything above the vapor you could see a good way; but a vessel's hull you could not see beyond a short distance. You could see a light half a mile.' He then proceeded to state some facts from which the conclusion was inferrible that there was no light: but the proofs of the other side were full that there was a light, and that it was suspended in the rigging of the injured vessel, some twelve feet above the deck; and moreover, that the mate was on deck as a lookout.
 After a full hearing, an interlocutory decree was entered in favor of the libellants and the cause referred to a commissioner to ascertain and compute the amount due to the libellants for the actual damages to the vessel and cargo occasioned by the collision. The commissioner having made and returned his report, by which he gave a specific sum as the value of the vessel, and an additional specific sum as the value of the cargo, the respondents filed nine exceptions to the report, as follows:
 1. 'That the commissioner allowed improper and immaterial evidence to be put in by libellant;' the exception, however, not stating what the evidence was.
 2. 'That he had no evidence to justify his report;' the exception not setting forth what evidence he did have.
 3. 'That he reported more than the evidence warranted;' the exception stating nothing further.
 4. That he had 'failed to report the principle of the decree.'
 5. That he 'admitted evidence of witnesses as to the value of the vessel on the part of the libellant, who were not competent as to that fact, and whose evidence should have been rejected;' no names of witnesses being given, nor any specification of the reasons why they were incompetent; nor what they swore to; nor why their evidence should have been rejected.
 6. That he 'reported the value of the cargo as part of the damage,' when the libellant is not entitled to recover therefor.
 7. That the evidence showed the vessel to be of far less value than the report made it.
 8. That the loss of the vessel was not the necessary or actual results of the injury to the vessel.
 9. That the loss is shown to have been incurred by the fault of the libellant or his agents.
 The court, after full argument, overruled these exceptions, including the sixth, and entered a final decree in favor of the libellants for the amounts reported. Appeal was then taken by the respondents to the Circuit Court, where the parties were again fully heard, and the decree of the District Court affirmed; whereupon the respondents appealed to this court, and now sought to reverse the last-named decree.
 Mr. Haskett for the libellants: The answer is in some respects too indefinite. It does not specify as it ought to have done wherein the ship was lying improperly at anchor, if she was lying so at all. The exceptions, also, to the commissioner's report are for the most part far too indefinite. Certainly this is true as respects the first, second, third, fourth, and fifth exceptions. They would impose upon the judges of this court the labor of hunting in the most minute way, throughout the record, to see wherein the alleged error of the commissioner consisted; leaving them in the end to guess at it only. This is irregular. The sixth exception is without foundation in law. The evidence shows that the collision was through the fault of the respondents alone. If this is so, the libellants are entitled to damages for her cargo. The collision was the cause of the loss, and the owners of the vessel as common carriers are liable to the owners of the cargo. The Propeller Commerce, decided lately,[1] in this court, is in point.
 Mr. Gillet, contra: The injured vessel was anchored, of a very cold night, in a great thoroughfare of navigation. Her light, if any light was on her, was in the rigging. There was a mist on the water, and the light was obscured. The case is one of misfortune at worst; for which the respondents are not liable.
 The answer and first five exceptions are in sufficient form. The court has the whole record, in a printed shape, before them. Learned in law, and instructed by the evidence in the facts, they can readily see wherein the point of each exception lies.
 The sixth exception is well founded. The libellants are not entitled to recover for the value of the cargo. They have neither averred or proved that it belonged to them, nor that they were carriers. The inference is fair that it was taken as freight for third persons. They do not even show that the claim for the loss of the cargo was assigned to them, nor that they became the insurers of it; nor that under the circumstances claimed by libellants in this case, they would be liable over to the shipper. It does not appear whether the libellants or shippers insured, or not; or if insured, whether they have abandoned to the underwriters, so that the claim, if valid, belongs to the latter. It is no answer to say that the libellants are liable to the shippers for it. This may, or may not be so, and depends more upon what is not, than what is to be found in the record. The libellants have no right to impose upon the claimants the chances of double payment for the same thing. They had it in their power to have placed this matter upon proper footing by filing the libel in behalf of themselves and for the benefit of the shippers, or in some other way made the shippers parties, so that a recovery would have enured to their advantage and concluded them, and would have left the proceeds, when collected, in the registry, for them. It is clear, if the libellants could not do this, and thus bind the shippers, they cannot bind them when not named or referred to in the libel; and if they could not thus bind them, they cannot recover for the value of the shippers' property. The case of the Propeller Commerce, cited on the other side, does not determine this question. That was a case of common carriers, and this is not. Whether the owners of the cargo were protected by the form of the proceedings, or concurred therein, is not stated. Ordinary shipments, like the present, are upon special agreement, and the freighter is not a common carrier. But even in case of common carriers, the owner of property retains his ownership and right to control and to sue for injury to it.[2]
 Mr. Justice CLIFFORD, after stating the case, delivered the opinion of the court:
 
 
 1
 1. Persons appearing as claimants, or for the purpose of making defence in causes civil and maritime, are required, under all circumstances, to answer on oath or solemn affirmation, and the authorities are unanimous that the answer should be full, explicit, and distinct, to each separate article and allegation of the libel.[3] Claimants merely allege, in this case, that the vessel of the libellants lay in an improper manner, and in an improper place; but the answer does not set forth, or in any form point out, in what manner she lay, or in what respect the manner was improper, nor is there any definite description of the place where she lay, or any reasons assigned why it was an improper anchorage. Explanations in that behalf are entirely wanting; nor is it possible to determine from the allegations of the answer whether the respondents intended to set up that the place selected as an anchorage was an usual one, and that those in charge of their vessel were thereby misled, or whether that part of the answer was intended as an averment that she lay too near to or too far distant from the shore, and more or less in the pathway of navigation than was customary or necessary. Such indefinite allegations are hardly sufficient to constitute a valid defence; but as no exception was entered to the answer in the District Court, and inasmuch as this point was not made here in argument, perhaps it is but right that the decision of the case should true upon the merits of the controversy.
 
 
 2
 2. Evidence shows that the schooner of the libellants was bound on a voyage from Indian River, in the State of Delaware, to the port of New York; that she anchored a mile or two to the northward of Little Egg Harbor light, in consequence of the severity of the cold, and because it was blowing so heavily that those in charge of her did not deem it safe to attempt to proceed on the voyage. Proofs also show that the anchorage was a proper one, and that a number of vessels were anchored still farther to the south. She had a good light suspended in the rigging, and the mate was on deck as a lookout. Suggestion is made that there was some mist or vapor on the water; but if it were conceded that the testimony establishes that fact, still it could not benefit the respondents as a defence, because the proofs are full to the point that it was a clear, moonlight night, and that the light suspended in the rigging of the schooner was some twelve feet above the deck of the vessel. Witnesses for the respondents, or some of them, testify that they did not see the light until just before the collision occurred, and the inference is attempted to be drawn from that fact, that the light was in an improper place; but the weight of the evidence satisfies the court that it might easily have been seen if there had been proper vigilance on the part of those in charge of the respondents' vessel. Both the courts below held that the respondents were in fault, and we entirely concur in that opinion.
 
 
 3
 3. None of the exceptions to the report of the commissioner are entitled to any consideration except the sixth. First exception was, that the commissioner allowed improper and immaterial evidence to be introduced by the libellants; but the exception is not accompanied by any report of the evidence objected to, and of course there is no means of determining whether it was proper or improper. Second exception was, that the commissioner had no evidence to justify his finding, which, without a report of the facts, is quite too indefinite to be available for any purpose, and the same remark applies to the third and fourth exceptions, which need not be reproduced. Fifth exception was to the effect that witnesses were admitted to testify as to the value of the vessel who were not competent, and whose evidence should have been rejected; but the names of the witnesses are not given, nor is it stated why they were incompetent, nor what their testimony was, nor on what ground it is claimed that the testimony should have been rejected. Suffice it to say, that in the judgment of this court these several exceptions are without merit, and were properly overruled. Sixth exception is to the effect that the commissioner improperly reported the value of the cargo as part of the damage, when, in point of fact, the libellants were not entitled to recover therefor. Report of commissioner shows that he estimated the actual damage to the cargo as well as the actual damage to the vessel, and the decree states that the report, as made, was confirmed by the court. Taken together, therefore, the report and decree affirm the principle that the libellants, under the circumstances of this case, were entitled to recover both for the damage to the vessel and cargo. Appellants insist that the action of the court in confirming the report was erroneous, and that the decree on that account should be reversed. Common carriers, however, it is conceded, are liable for the safe custody, due transport, and right delivery of goods and merchandise intrusted to them to be conveyed from one port or place to another; and where the owners of the ship or vessel damaged by a collision sustain that relation to the cargo, it is admitted that they may recover for its loss or injury in the suit for the collision, if the libel is properly framed and the proofs sustain the charge. Admission to that effect could hardly have been withheld, as it was so decided by this court in the recent case of the Propeller Commerce,[4] to which reference was very properly made. But it is contended that the decision in that case was placed exclusively upon the ground that the lake boat Isabella was a common carrier in the strict technical sense, and the argument is that the schooner of the libellants was not such a carrier, and, therefore, that the rule adopted in that case cannot be applied in the case under consideration. Whether all ships and vessels employed in transporting goods or merchandise from port to port are, strictly speaking, common carriers or not, it is not necessary to determine in this case. Suffice it to say, that they are carriers, and as such are liable for the safe custody, due transport, and right delivery of the goods or merchandise which they receive and undertake to transport, and nothing can discharge them from the obligation of the undertaking, as specified in the bill of lading, but the excepted perils, or the act of God, or the public enemy. Liability, therefore, of the schooner of the libellants as a carrier, was precisely the same as that of the lake boat Isabella, in the case referred to, so that the rule adopted in that case is fully applicable to the case at bar.[5] Undoubtedly, all persons interested in a cause of collision may be joined in the libel for the prosecution of their own claims and the protection of their own interests. Owners of the vessel and the shippers of the cargo, for example, and all other persons affected by the injury, may be made parties to the suit, or it may be prosecuted by the master as the agent of all concerned. Where it appears that the party or parties named as libellants are competent to prosecute the suit, the nonjoinder of others having an interest in the controversy must be shown by exception, and, if not made to appear in the court below, cannot be made available as an original objection in the appellate tribunal. Objections to parties, or for the want of proper parties, should be made in the court below, where amendments may be granted in the discretion of the court. Parties improperly joined may, on motion, be stricken out, and new parties may be added by a supplemental libel or petition.[6] Service of regular process is a warning to all parties who have any interest in the cause to come in and protect their interest; and unless they do so, if due notice was given, they are bound by the decree.[7] Amendments are readily granted in the Admiralty Court, as carrying out the maxim that all the world are parties to the proceeding; and if due notice be given, and any one interested fails to appear, he cannot thereafter have any ground of complaint. Collision suits are frequently prosecuted by the owners of the injured vessel for damages to the cargo as well as to the vessel, and it does not appear that any serious embarrassment has grown out of the practice. Manifestly, where the prosecution is instituted by one or more parties for themselves and others not named, it would be more regular that it should be so averred in the libel; but as there can be only one prosecution for the same collision, it is not perceived that the omission of that averment can operate to the prejudice of the claimant.[8] Persons appearing as claimants may object to the want of proper parties, and it may be that, if the exception is seasonably and properly taken, the proceeding cannot be sustained. On that point, however, we express no decided opinion, but leave the question to be determined when it shall arise. Suit in this case was commenced by the owners of the vessel, and no exception was taken to the nonjoinder of the shippers of the cargo, either in the pleadings or in any stage of the proceedings, prior to the appeal. Under these circumstances, we are all of the opinion that the objection must be overruled.[9] No inconvenience will result from this rule to the claimants of the other vessel, and there will still be sufficient power in the court to afford protection to the rights of the shipper of the cargo, provided proper measures are taken by him to assert his rights before the controversy is completely ended. Where the suit is commenced by the owners of the injured vessel, it is undoubtedly competent for the owners of the cargo to petition to intervene for the protection of their interests at any time before the fund is actually distributed and paid out of the registry of the court. Our conclusion is, that the suit was well brought, and that it was well and properly prosecuted in the name of the libellants. Case does not show that the libellants are not the owners of the cargo; but if not, the real owners thereof may still intervene.
 
 
 4
 The decree of the Circuit Court is therefore affirmed with costs.
 
 
 5
 DECREE ACCORDINGLY.
 
 
 
 [1]
 1 Black, 574.
 
 
 [2]
 New Jersey S. N. Co. v. Merchants' Bank, 6 Howard, 380, 381.
 
 
 [3]
 3 Greenleaf on Evidence, 398, 435.
 
 
 [4]
 1 Black, 582.
 
 
 [5]
 The Niagara v. Cordes, 21 Howard, 26; Clark v. Barnwell, 12 Id., 272.
 
 
 [6]
 Dunlap, Practice, 87.
 
 
 [7]
 Benedict, Admiralty, § 364, p. 203; The Mary, 9 Cranch, 114.
 
 
 [8]
 The Kalamazoo, 9 English Law and Equity Reports, 557.
 
 
 [9]
 The Steamboat Narragansett, Olcott Adm. R., 255; The Iron Duke, 9 Jurist, 476; The Monticello v. Mollison, 17 Howard, 155; Fretz et al. v. Bull et al., 12 Id., 466; Sedgwick on Damages, 3d ed., 469; Mer. Shipp. by Maclachlan, 280; Hay v. Le Leve, 2 Shaw's Appeal Cases, 395; The Petersfield, MS. Cs. temp. Marriott.