## THE CITY OF NEW YORK.

*(District Court, S. D. New York. July 1, 1885.)*

**1. COLLISION—MASTER AND SEAMEN—PERSONAL EFFECTS OF—HALF DAMAGES.**
> The claims of master and seamen for loss of personal effects through a collision are affected with the faults of their own ship; if both vessels are in fault, and one be lost, her crew recovers of the other vessel but half their damages.

**2. SAME—CONTRIBUTION TO CARGO—MASTER LIABLE—CREW NOT.**
> Seamen, being responsible to third persons for willful defaults only, are not liable to have their recovery for loss of personal effects applied to make up their vessel's share of loss of cargo on collision through negligence. *Secus,* as to the master's effects, for he is responsible to cargo-owners for all the negligences of his subordinates.

**3. APPEAL—SUITS IN REM AND IN PERSONAM—STAY.**
> After suit *in rem* by master for loss of vessel, cargo, and personal effects, insurers of cargo brought suit *in personam* for loss of cargo by same proctors. Both vessels being in fault, on recovery of half damages, the vessel lost not receiving enough to make good her own half of cargo, the claimants were adjudged to pay the whole loss of cargo, and one-half of seamen's effects, for benefit of insurers, and, both desiring to appeal, a decree was entered in the suit *in rem* only, with stay of the suit *in personam* on all the respondents executing the bond on appeal in the suit *in rem.*

In Admiralty.

*Scudder & Carter* and *Geo. A. Black,* for libelants.

*A. O. Salter,* for respondents.

BROWN, J. Upon the settlement of the decree, a question has arisen in regard to the amount recoverable for the loss of the effects of the master and crew of the bark Helen, which was sunk, and also as re-

gards the application of the sums allowed therefor. Both vessels were held in fault, (15 Fed. Rep. 624; 23 Fed. Rep. 616,) and the damages were ordered to be divided. The libelants were the owners of the Helen, and sued to recover for the loss of that ship, and also in behalf of the master and crew for the loss of their effects, as well, also, as carriers, for the recovery of the loss of cargo, which belonged to third persons. The report on damages as confirmed shows a loss on account of the bark of $21,898.64; of $2,102.45 on account of the effects of the master and crew; and $27,004.64 on account of the cargo. The damages to the steam-ship, which were set up by way of recoupment in the answer, amount to $7,876.29. Both vessels being liable *in solido* for the loss of the cargo, the amount that would be recoverable for the loss of the bark must be applied to pay her share of the loss of the cargo, and it is insufficient for that purpose by several thousand dollars. The bark's share of the loss of the cargo is $13,502.31, while one-half the difference of the damages to the two vessels, which is the limit of her recovery against the steamer, is but $7,011.13.

For the effects of the master and crew the libelants claim to recover against the steamer the whole loss, upon the authority of *The Titan*, 23 Fed. Rep. 413. That case, which was one of personal injuries upon a collision, was decided upon the authority of *Chicago, M. & S. P. Ry. Co.* v. *Ross*, 112 U. S. 377; S. C. 5 Sup. Ct. Rep. 184. The latter case arose from a collision of railroad trains through the negligence of a conductor to communicate to the engineer the orders which had been telegraphed by the superintendent to the conductor. The decision of the supreme court was limited to the facts of the case, holding that "the conductor of a railway train, who commands its movements, directs when it shall start, at what station it shall stop, at what speed it shall run, and has the general management of it, and control over the persons employed upon it, represents the company, and therefore that for injuries resulting from his negligent acts the company is responsible."

Some caution is doubtless to be observed in the application of decisions concerning railways to maritime collisions. In the case of *The Titan* there was personal fault of the master in command in not assigning any lookout, one of the functions of command; and it is upon this analogy, as regards the command of the vessel, that I understand that decision to be placed. But in the later case of *Quinn* v. *New Jersey Lighterage Co.*, 23 Fed. Rep. 363, it was held that co-laborers take the risks of such negligent acts of the master as are not those of command, but are only such as any employe might perform.

There seems to me considerable doubt whether the decision of the supreme court in the *Ross Case* was designed to introduce any modification in the maritime law as regards the liability of a vessel, or of her owners, to seamen or officers on board for injuries or losses sustained by them in the service of the ship. Such injuries and losses

are as old as navigation. The maritime law, as respects personal injuries, has long been considered as well settled in limiting the recovery against the seaman's own vessel to wages for the rest of the voyage and expenses of cure, where the owners have not been in any fault. *The City of Alexandria*, 17 Fed. Rep. 390, and cases there cited. If any different rule is hereafter to be applied as regards injuries happening through the commands of the master, the present is not such a case. Here the master was below, and was not in any personal fault.

Claims for the loss of seamen's effects have been frequently included in the judgments of this court in collision cases, where the fault was wholly in the defendant's vessel. But I know of no case in which such claims have ever been adjudicated against the seaman's own vessel, where the loss was wholly by the fault of her own officers or men. No such claim could be entertained without overturning one of the cardinal principles of maritime law, which identifies the interests of the mariner with the interests of his ship, and affects all with the faults of the ship. As there was fault in this case on the part of the bark, as well as on the part of the steamer, the claims of the crew against the steamer must be limited to one-half their damages.

There is no rule, and no modern precedent, so far as I am aware, for holding the seamen, or any of the ship's company below the master, responsible to cargo-owners for injuries to cargo arising from mere negligence in the management of the ship. And if they are not legally responsible for such injuries, then their personal effects cannot be held to contribute for the loss of cargo. By the old Rhodian law there was apparently no distinction between master and mariner; each was alike answerable for his acts of negligence, and his own acts only. Article 26 provided that "if the master, or any of the mariners lying ashore, the ship happens, during their absence, to perish, whether by night or by day, the master or mariners so lying ashore shall sustain the damage; and those who remain in the ship shall be free. And whatever damage befalls a ship by any one's negligence shall be refunded to the owner by the persons by whose fault it happened." By the eighth article it was provided that "if a master to whom the ship was intrusted, run away with her, with the consent of the mariners, into a foreign country, all their goods, and whatsoever they possess, shall be seized and sold; and if not sufficient to pay the value of the ship, the master and mariners shall be hired out till they have made satisfaction." By article 10 it was also provided that "if, by the negligence of master and mariners, any damage or shipwreck happen, they shall be answerable for it. And likewise if, by the fault of the merchant, the ship and cargo perish, he shall sustain the loss. But if a shipwreck happen merely by misfortune, without any failure on either side, what can be saved of the ship and lading shall be prized and brought to a contribution."

In modern maritime law, so far as I can discover, the liability for

injuries through negligence is confined to the owners of the ship and to the master, who is responsible for all his subordinates that are appointed by him and are under his control, (Story, Ag. 314, 317;) and that is the general rule in English and American law. Agents or subordinates are not, in general, responsible to third persons for mere non-feasances or omissions of duty in the course of their employment, there being no privity between them. *Lane* v. *Cotton,* 1 Ld. Raym. 655; Story, Ag. §§ 308, 313; 2 Kay, Shipm. 1153. The liability of seamen for loss or injury to cargo is limited to cases of willful default. A recovery will therefore be allowed for the benefit of the seamen in this case to the extent of one-half the value of their effects, without liability over to contribute for the loss of cargo.

By the English and American maritime law the master is responsible for the loss of cargo equally with the owners, without reference to any personal fault of his own, but by reason of his accountability for the acts or omissions of his subordinates, as a kind of subrogated principal, says Story, and qualified owner; although his liability is more restricted on public vessels, where he does not appoint his subordinates, and is therefore not responsible for their defaults. *Nicholson* v. *Mqunsey,* 15 East, 384; Story, Ag. § 314; *The Limerick,* 1 Prob. Div. 411. It follows that in this case his personal effects must abide the fate of the ship herself, and, like the ship and owners, be held to make up the ship's share of the loss of cargo. The statute of 1851, limiting the liability of owners, excepted all existing remedies against the master, officers, or mariners for loss or injury of cargo. Rev. St. § 4287. The amount of $689.90, being one-half the amount of the master's personal effects, must be applied, therefore, like the amount recoverable for the loss of the ship herself, upon account of one-half the cargo, for which the owners and the master are alike responsible. After applying both these sums on account of the half of the cargo for which the bark is responsible, there will still be a deficiency which the steamer must make good. The result, therefore, is that there must be a decree against the steamer for the whole loss of the cargo, and also for the one-half of the seamen's effects.

After the commencement of the suit *in rem,* the Atlantic Mutual Insurance Company, having paid the cargo-owners for a total loss, commenced a suit *in personam* against the owners of the steamer to recover the value of the cargo. That suit was heard at the same time as the suit *in rem,* (see 16 Fed. Rep. 279;) but further proceedings were stayed until the settlement of the decree in the suit *in rem.* The libelants in both suits are represented by the same proctors. They now ask to be permitted to enter decrees in both suits: in the suit *in personam,* for the whole amount of the value of the cargo; in the suit *in rem,* for the amount payable to the seamen, with directions for offsetting the residue against the respondent's liability in the other suit. The defendants object to entering decrees in both suits, because that would subject them to double appeals, to double expenses,

and to additional inconveniences. No practical reasons are suggested for the entering of decrees in both suits. Both sides, it is understood, expect to take an appeal; the amount involved being considerable, and the questions close. The whole case on each side can be perfectly presented upon appeal from a single decree in the suit *in rem;* and on such an appeal, which might go to the supreme court, both sides would stand upon equal terms. The whole case cannot be so presented upon appeal from a decree in the suit *in personam* alone. In the absence of any good reason, I think the burden of an additional appeal should not be imposed upon the respondents *in personam.* The libelants in the suit *in rem* lawfully represent the rights of the insurers; and the latter, being represented by the same proctors, in effect prosecute and control the suit *in rem.* The only reason for entertaining the suit *in personam,* and for not dismissing it upon the plea in bar, was that all the respondents had not made themselves personally liable in the suit *in rem* by executing a bond for the release of the vessel. All the objects of the suit *in personam* for the purpose of security will be attained by requiring, as a condition of a stay of further proceedings, that the respondents shall all execute a stipulation upon any appeal that may be taken from the decree in the suit *in rem.* See *The City of Paris,* 1 Ben. 529; S. C. 14 Blatchf. 531, 536; *The Commander in Chief,* 1 Wall. 43, 52.

A decree may therefore be entered in the latter suit for the payment, to the use of the Atlantic Insurance Company, of the value of the cargo and interest; and for the use of the seamen, one-half the amount reported due for their effects, excluding any claim of the master.