The motion to remand must accordingly be overruled.

---

## THE WAIONTHA.

### (District Court, D. Connecticut. March 16, 1903.)

### No. 1,357.

1. ADMIRALTY—EXCEPTIONS TO COMMISSIONER'S REPORT—SUFFICIENCY.
   General exceptions to the findings of a commissioner in admiralty, containing no reference to the pertinent evidence, are not entitled to consideration by the court.

In Admiralty. Suit to enforce statutory lien for repairs. On exceptions to commissioner's report.

The following is the commissioner's report:

The undersigned, having been appointed December 9, 1902, a commissioner to hear the testimony and report his finding to the court in the above-entitled matter, would respectfully report that the parties appeared before him at his office in Hartford on the 24th day of December, 1902, and on January 14 and 30, 1903, and were fully heard; the libelant appearing by George Curtis Morgan, and the claimant by Wm. H. Deady; representing, also, a mortgage interest to himself.

It was proved that the steam yacht Waiontha was repaired by the libelant between July 23, 1901, and June 14, 1902, at its works in New London. It was admitted and found that the libelant, the Morgan Ironworks, is a corporation duly organized, and carrying on the business of building and repairing steam vessels at New London, Connecticut, and that at the time the Waiontha was in her home port, and was owned at the start by Eliza L. Lazzaro, and later by the Hartford & New London Transportation Company, and that Albert E. Lazzaro was managing agent under both owners, and at the completion of the repairs a certificate of lien for the amount of them was filed in regular form, as prescribed by statute, in the town clerk's office in New London. The libelant presented a bill of the labor and materials entering into said repairs, amounting, as subsequently amended, to $1,031.29, which was laid in, and marked "Libelant's Exhibit A." Libelant's secretary and superintendent of the yard, having general oversight that the work of the company is carried forward in all departments, testified to the correctness of the bill; that it was charged on the company's books to steam yacht Waiontha and owners. He did not himself make the Exhibit A, but caused it to be made by the bookkeeper of the company, and was present, and saw it prepared, and compared it with the entries on the company's books, and found it to be correct. He presented the original books of entry of the company, showing the dates when the materials furnished and services rendered to the boat were supplied, and what they were, and that they were charged thereon to the steam yacht and owners, for the inspection of the commissioner, and testified that the charges in the account rendered were just and reasonable for the services rendered and materials furnished; and he was not cross-examined thereon. The work was all ordered by Mr. Lazzaro, Wm. H. Deady, Horace Johnson, and engineers employed by them. Correspondence concerning the different items of repair shows that they were very fully discussed, and that the libelants were given a carte blanche to do the needful to put the yacht in working condition, and to put their prices to their services. There was no contract. The correspondence shows

that libelants had little limit as to the work they were to put on the yacht. They were called upon to fix her up quick at times, to show her off to sell, oftener than they were called upon to fix her up to use to be chartered. It is evident they did not wish to put any more upon her than they could get back, and did not want to fix her as an investment for themselves, and apparently were doubtful about payment. Anyhow, they were a very long time doing a very small amount of work, and during the whole of the time Mr. Lazzaro and Mr. Deady ceased not to push them at all times, and they still moved very slow. Irving J. Avery, the bookkeeper of the libelant, was put on the stand in connection with the libelant's books—Machine Shop Daybook and Marine Railway Shop Book. These books contained the items of labor and material, and the dates when furnished, with memoranda that they were furnished to the Waiontha, but no prices were connected with them in such original entries; and it was not until Mr. Avery aggregated them into the statement libelant's Exhibit A, under the direction and supervision of Superintendent Morgan, that prices were placed upon them. He (Morgan) made the prices, and upon his statement, with little support, rests the claim that they were furnished to the yacht, and that the prices therefor were just and reasonable. Libelant's Exhibit A does not indicate the parts of the yacht which were worked upon and supplied on the different days covered by the items enumerated therein, and the witness Avery was equally silent upon these points. He put the supplies and services on the book each day, with enough memoranda to tell him what boat they went upon; but he did not follow them and see them put on in any instance, and had no personal knowledge of their application whatever. He does not disclose that he was informed by any foreman or otherwise that these supplies and services went on the Waiontha, or how he was informed, or if it was only a guess. The fact of their application to this boat rests on the evidence of the superintendent alone, and, because that his statements with such regard were unchallenged and unquestioned. I find to be sufficient evidence.

Upon the first sheet of libelant's Exhibit A is a charge for taking out and putting in boiler of $50. Superintendent Morgan explains on page 24 of the evidence that although made in December, 1901, and that the boiler was only taken out at that time, it was to cover putting it back. May 23, 1902, the boiler was still on the dock, and had not been put back; and the agreement set out in claimant's Exhibit A was made, which was to put in asbestos lining, and put it back on its foundation, and do all necessary work, except connections of pipes, etc., for $75. Twenty-five dollars' worth of the work under this contract is charged in libelant's Exhibit A; i. e., for putting boiler back. Mr. Johnson contracted for $50 worth of repairs, over and above the cost of putting the boiler back. He paid only $25 towards them (that is, only $50 on his whole $75 contract), because he says "the work was not performed according to contract," and there he left it. Supt. Morgan was called in rebuttal, and asked what was done under that contract, and said, "The boiler was placed in the boat, the asbestos was fixed in the casings, and the casings assembled around the boilers, smokestack replaced, I think." But he was not asked nor did he state that the work was performed according to contract. The libelants have received $25 for putting this boiler back, from Mr. Johnson, and that much should be deducted from the amount shown in libelants' Exhibit A. As to the repairs, the burden of the proof was upon them (the libelants), and they did not meet the issue, that it was performed according to contract.

The claimants make the point in argument that the libelants' work was all covered by a contract of $400. The libelants estimated repairs to cost $400 or more at one time, but not in form of a contract, and the estimates of repairers of all sort are notoriously unreliable.

The point is made that E. F. Morgan called himself secretary, when he was not so in fact. He states he is now secretary, and the fact seems immaterial, as it appears evident that he is the knowing man of the libelants' concern as to its daily occupations and doings. The correspondence shows that the libelants were constantly urged to give prices and estimates, and as constantly neglected to comply. They simply gave notice of what was wanted, and, when they had no better job, went ahead.

The further point is made in claimants' argument that the work for which the libel is brought was completed March 20, 1902, and that the certificate of lien was not filed until May 9, 1902, being more than ten days, and consequently was of insufficient effect to give an admiralty court jurisdiction. There is no evidence in the case of when the work on the vessel, independent of the boiler, was completed. There is no charge made in libelants' Exhibit A, after March 20, 1902, save the charge of $50 for taking out and putting in boiler, and the putting in of the boiler had not then been completed; and the claimants' Exhibit A shows it was still on the dock outside until May 23d, and after the lien was certified; and the correspondence shows that matters of repairs to the boiler were in question and unsettled until it was, in fact, put back, some time in June. There is no evidence in the case showing when the certificate of lien, under the Connecticut law, was filed.

When in the trial of the case this subject of lien was entered upon, the parties agreed to the entry upon the record of an admission which, as subsequently modified, is in these words: "It is admitted that upon the completion of the work a certificate was filed by the libelant in the town clerk's office at New London, Connecticut, in due and regular form, as prescribed by statute, for said claim, as alleged in paragraph 4 of the libel herein; and it is further admitted that said statute was in all other respects complied with." Paragraph 4, referred to, alleges the certificate of lien was filed May 9, 1902, but admits nothing as to the completion of the work; nor do I find any proof as to that, except as heretofore stated. The stipulation of both parties admits the certificate of lien was filed "upon the completion of the work," said to be May 9, 1902. Apparently the stipulation admits that the work was completed May 9, 1902, and that the certificate of lien was filed on that day. The proof shows that May 9, 1902, was not after, but prior to, the completion of the work.

I find that the libelant is entitled to recover the amount of libelant's Exhibit A, $1,031.29, less $25; total, $1,006.29.

Dated February 13, 1903.

Respectfully submitted,        E. E. Marvin,
Commissioner.

## Exceptions to commissioner's report:

Respondent excepts to the report of E. E. Marvin, commissioner, made by him, and filed February 13, 1903, for the following causes: First. Because commissioner hath found that charges were made regularly for work alleged to have been performed on vessel. Second. That commissioner hath found that work was done on vessel after March 20, 1902. Third. Because commissioner hath not allowed a credit of $31.29 paid by respondent, as appears by evidence taken in the cause. Fourth. Because commissioner hath found that work was done on vessel after March 20, 1902, when the evidence taken in this cause shows any work performed after that date was under special contract and paid. Fifth. Because commissioner hath found that there is no evidence taken in this cause showing when certificate of claim was filed, under the statute of Connecticut, when the allegations in paragraph 4 of the libel, which is not controverted, and the evidence shows was filed 50 days after the work was finished. Sixth. Because commissioner hath found that there is an admission that work was completed on the day of filing notice of claim, May 9, 1902, when it appears from the evidence taken in this cause the last item of work and materials furnished was March 20, 1902. Seventh. Because commissioner hath found that work on the boiler had not been completed until after May 9, 1902, and after lien was certified, when the evidence shows said work was performed under special contract and paid. Eighth. Because commissioner hath found it is immaterial that E. F. Morgan swore falsely that he was secretary of the company, and takes his testimony as true. Ninth. Because commissioner hath found that there is sufficient evidence taken in this cause to sustain the libel filed herein May 27, 1902. Tenth. Because commissioner hath found that libelant is entitled to recover amount of libelant's Exhibit A, $1,031.29, less $25; total, $1,006.29. Eleventh. Respondent excepts to each and every other finding in the report of the commissioner filed herein February 13, 1903.

122 F.—46

Geo. Curtis Morgan, for libelant.
Wm. H. Deady, for respondent.

PLATT, District Judge. The gentle hint which was embalmed, for the benefit of proctors pursuing admiralty practice in this district, on page 434 of 116 Fed. (The John H. Starin), seems to have had no effect whatever upon the proctor for respondent herein. It is therefore necessary to make the suggestion more forceful and impressive, and it is fortunate that the opportunity to do so arises in a matter when, under the existing circumstances, it is believed that justice impartial can be administered at the same moment.

Under the rules laid down in The Commander-in-Chief, 1 Wall. 50, 17 L. Ed. 609, none of the exceptions filed ought to be discussed or investigated. They are overruled, and the report of the commissioner accepted. Let a decree be entered accordingly.