## THE CHARLOTTE.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

### No. 515.

1. COLLISION—STEAMER AND SAILING VESSEL MEETING—EXCESSIVE SPEED IN FOG.

A steamer which entered a thick fog bank on the York river at a speed of 10 miles an hour *held* solely in fault, on account of. her excessive speed. for a collision with an oyster schooner tacking down the river in a light wind, and which was run down and sunk by the steamer before the latter could stop after hearing the schooner's fog horn.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond.

For opinion below, see 124 Fed. 989.

Reuben C. Foster and Robert H. Smith (Herbert J. Lewis, on the brief), for appellant.

Samuel L. Kelley and Thomas H. Edwards, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the District Court of the United States for the Eastern District of Virginia, in admiralty.

R. D. Robbins, administrator of Ulysses L. Robbins, deceased, and Thomas Randal, administrator of Elvin Randal, deceased, each filed his libel against the steamship Charlotte. The two decedents were each drowned as the result of a collision between the Charlotte and the schooner Anna M. Harris in York river. The deceased were members of the crew of the Harris. The two cases were consolidated and tried together. The learned district judge heard the case, the witnesses testifying before him. He found that the collision was the result wholly of the fault of the Charlotte, and gave damages, $1,600 to Robbins, and $900 to Randal. An appeal was allowed, and the case is here on the assignments of error.

The steamer Charlotte, of 1,746 tons, runs regularly between Baltimore, Md., and West Point, on the York river, in Virginia, having several landings on that river. The Anna M. Harris is a small, two-mast oyster schooner, 53 feet in length, with 27 tons register. On the morning of 30th August, 1902, the Charlotte, on her way to West Point, left Allmonds Wharf, one of her landings, a distance of 11 miles.

There had been a heavy fog, which had begun to break up in places about the time she left Allmonds Wharf. The fog was thick along the shores of the river, but the channel was more or less clear, so that the navigation of the steamer was not seriously interrupted. Nevertheless she blew her fog signal at regular intervals. The steamer proceeded up the river on a flood tide, with a light wind from the northwest. She was running at a speed of 10 miles an hour. She had an efficient lookout on the main deck near the stem, and in her pilot house were her master, the first officer, and a quartermaster. When she had gotten near Bell Rock Lighthouse, about five miles from Allmonds, the steamer ran into a thick bank of fog. Just as she was on the point of entering this bank of fog, her officers heard one blast of a horn sounded in the fog, off the port bow. This indicated to them that there was a sailing vessel in their vicinity on the starboard tack. With the wind northwest, such a course would have taken the sailing vessel to the westward enough for the Charlotte, provided that she had had room to get out of the way. Immediately after he entered the fog, having heard the horn, the master of the Charlotte gave the signal to stop her engines, ordered his wheel aport, and then gave signal to reverse the engines. Another and a nearer blast of the horn was heard more in the course of the Charlotte, and at once the schooner was seen right under the bows of the Charlotte on the port, and not on the starboard tack. In an inconceivable space of time the stem of the Charlotte struck the schooner on her starboard side abaft the fore rigging, and the schooner sank immediately. A lifeboat was lowered from the steamer, two of the crew of the schooner, the master and a passenger, were picked up, but Robbins, the mate, and Randal, a colored boy, were drowned. The two men who were rescued both swear that the fog horn was being blown at proper intervals, two blasts, from a quarter to 6 until a quarter to 7, when the collision occurred, and that the schooner was on the port tack. They had heard the steamer coming, and entertained no fear of the collision until she suddenly loomed in front of and over them. His honor who tried the case was most favorably impressed with the bearing and conduct of these witnesses, and their evident desire to tell the truth.

What was the proximate cause of the collision? We find the steamer entering a thick fog at the speed of 10 miles an hour, having heard the horn just before she entered the fog. After that, a very short interval, her master gave the signal to stop the engines, followed by a direction to port the wheel, and then the signal to reverse, and the collision. We are of the same opinion as the judge who tried the case —that the collision was caused by the speed of the steamship, and that she was in fault. The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148, is like this case in some respects. The collision was in a fog. The steamer was misled by signals from the bark, and ported instead of starboarding, which contributed to the collision. But the court held the steamer in fault for going at seven miles an hour in the fog—an unreasonable speed. In The Martello, 153 U. S. 64, 14 Sup. Ct. 723, 38 L. Ed. 637, six miles in a fog was held excessive. In The Colorado, 91 U. S. 692, 23 L. Ed. 379, six miles an hour was held excessive speed in a fog. In The Umbria, 166 U. S. 404, 17 Sup. Ct. 610,

41 L. Ed. 1053, the list of cases is stated, adopting that laid down in The Great Eastern, Brown. & L. 287: "It is the duty of the steamship to proceed only at such a rate of speed as will enable her, after discovering a vessel meeting her, to stop and reverse her engines in sufficient time to prevent any collision from taking place." See, also, The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122, 34 L. Ed. 687. Not only is this the rule when a steamer is in the fog, it applies equally to a · steamer entering a fog bank. The Abbie C. Stubbs (D. C.) 27 Fed. 573; The City of Alexandria (D. C.) 31 Fed. 427.

It is contended, however, that the schooner was guilty of contributory negligence, and that the crew share in that. The Queen (D. C.) 40 Fed. 694; The City of New York (D. C.) 25 Fed. 149. The· negligence charged on the schooner is the failure to blow two blasts on the fog horn, indicating the tack she was on. Her one blast was said to have misled the steamer. On this point the finding of fact of the district judge is clear and distinct. He saw the witnesses, and was convinced that the evidence of the master and a passenger on the schooner that the two blasts were sounded is true. We see no reason to differ from him. The defense of the steamer is that, hearing but one blast, and so believing that the schooner was on the starboard tack, it was supposed that she would have passed out of danger, especially as the steamer ported her helm. But the schooner was in a thick fog, tacking against a light wind, with the tide against her. She must have been moving very slowly. So when the steamer at speed broke into the thick fog, and almost immediately ran her down, it could have made no material difference whether she was on the port or starboard tack. The collision would have occurred in any event.

The decree of the court below is affirmed.