MERRITT & CHAPMAN DERRICK & WRECKING CO. v. MORRIS & CUMMINGS DREDGING CO.

(District Court, S. D. New York. June 21, 1904.)

1. ADMIRALTY—FINDING BY COMMISSIONER—SUFFICIENCY OF EXCEPTION.
   Under the rule laid down in The Paquete Habana, 189 U. S. 453, 23 Sup. Ct. 593, 47 L. Ed. 900, a general exception to the amount of a finding by a commissioner on a reference in admiralty is sufficient where all the evidence is attached to the report.

2. SHIPPING—RAISING SUNKEN VESSEL—VALUE OF SERVICES.
   Exceptions to the report of a commissioner finding the value of services rendered in raising a sunken dredge considered, and *held* without merit.

In Admiralty. On exceptions to commissioner's report.

Avery F. Cushman, for libellant.

Albert A. Wray, for respondent.

ADAMS, District Judge. Both parties except to the amount which the commissioner has found to be due to the libellant here. The libellant besides objecting that there is no merit in the respondent's exceptions, contends that they should not be considered because they do not conform to the requirements of The Commander-in-Chief, 1 Wall. 43, 17 L. Ed. 609. The respondent has called my attention to The Paquete Habana, 189 U. S. 453, 23 Sup. Ct. 593, 47

L. Ed. 900, where it was held, referring to The Commander-in-Chief, that where all the evidence is attached to the report nothing more is needed. The last case seems conclusive upon the point, and to justify a general exception. I must, therefore, hold that the libellant's objection to the respondent's form of exception is not good, and I have considered all the exceptions upon their merits.

The libellant's exceptions are:

"First: In that the Commissioner has reported the damages of the libellant at the sum of $4,000 and interest instead of the sum of $5,000 and interest.

*    *    *    *    *    *    *    *    *    *

Second: In that the Commissioner has not allowed for the use of the 'Monarch' for 5½ days at $500 per day and for 3 hours night work.

*    *    *    *    *    *    *    *    *    *

Third: In that the Commissioner has disallowed the claim of libellant for $464 for extra compensation &c.

*    *    *    *    *    *    *    *    *    *"

The respondent's exceptions are:

"1. Because said Commissioner found that the services rendered by the libellant sued for herein, were of the reasonable value of $4,000; whereas, he should have found the value of said services did not exceed the sum of $3,000.

2. Because said Commissioner allowed interest on said claim; whereas, he should have allowed no interest whatever.

3. Because said Commissioner, in making the award herein, took into consideration the amounts charged by the libellant to other people for similar services.

4. Because said Commissioner in making the said award, took into consideration testimony of certain charges made by the Boston Towboat Company for work done in Boston and Portland under totally different conditions.

5. Because said Commissioner did not rely wholly upon the evidence of the cost of maintaining that part of libellant's wrecking plant used in the work sued upon herein, adding to such cost a fair profit and making his award upon the consideration of such testimony alone."

The report is as follows:

"The action is brought to recover for the services of the libelant in raising Dredge No. 12 owned by the respondent and sunk off Erie Basin Breakwater, South Brooklyn, about a mile below Governor's Island. The only issue in the case is the value of the libelant's services. The libelant sues for $5,000; the respondent, by its answer, asserts that $2,000 is a fair compensation.

The dredge had been digging a channel, parallel with the Brooklyn shore; when she sank she settled at an angle of about 45 degrees, her off shore side settling into the channel she had been digging. At each corner of the dredge was a spud some 40 or 50 feet long and 2 feet square, used for mooring when she worked over soft bottom. Her spuds were down when she sank. The vessel sank on Sunday, June 26, 1898, and a portion of libelant's plant reached the vicinity of the dredge on the morning of the 27th of June. There had been no employment of the libelant by the respondent prior to the time of the arrival of the plant, but the undertaking by the libelant to do the work was ratified by the respondent, and the work commenced about noon of Monday, and continued until noon of Friday, July 1st, when the dredge was raised and was towed to the Flats at 42nd Street, Brooklyn. She was there pumped out and on the following day she was delivered to the dry dock for repairs; in all 5½ days, counting night work, were used in the service. There was evidence in the case tending to show some slight injury to the dredge incurred in performing the service, but no claim has been asserted of any off-set on this account.

There were employed upon the service, three derricks, the 'Monarch,' 'Reliance' and the 'Victor'; the pump-boat 'Lewis,' and the tugs 'W. E. Chap-

man,' 'Standard' and 'Hustler'; on these boats were their full crews and there were employed, in addition, a number of divers.

It is in evidence before me that the undertaking was rendered more difficult and arduous by the fact that the libelant was not able to sweep chains under the dredge, as is usual in such cases, because the spuds were broken or jammed in their casings and could not be lifted until the vessel came to an even keel; and hence, that it was necessary to tunnel in the mud under the boat inside of the spuds and pass chains through the tunnels.

I am satisfied, after a full examination of the testimony, that the work was done in a careful and expeditious manner and that no more plant was· used by the libelant than was necessary for the work, except that a less costly derrick than the 'Monarch' might have been at work on Monday and Tuesday, had it been ascertained at the beginning that the spuds were down and the chains could not, therefore, be swept under the dredge at the start. I also appreciate that when the 'Monarch' was once on the scene and working, it did not seem worth while to the libelant's superintendent to remove her and substitute a less expensive derrick. She was undoubtedly necessary for the purpose of lifting. In fixing the amount of the recovery of the libelant I have taken these facts into consideration.

The libelant is a corporation formed by the consolidation of two wrecking companies; it has its headquarters in New York where it maintains a large plant, consisting of derricks, tugs, pump-boats, divers, diving apparatus &c., and it is equipped for all sorts of wrecking work. There is on the Atlantic Seaboard no equipment as complete, as powerful, and as well fitted for large work as that of the libelant. Although parts of the equipment are in more or less continuous use, yet the heavier and more complete equipment is necessarily idle during a great portion of the year. Nevertheless, in order to be prepared for emergencies which are constantly arising, the whole plant is kept, day and night, in a state of readiness for service.

It is true that there is a smaller plant at Boston; another smaller plant at New London, and a third smaller plant at New York as shown in the testimony before me, but none of these is equal to the large undertakings which the libelant is able to perform. I have, therefore, considered the case on the evidence before me as involving the question of a unique plant, the charge for the services of which must be judged from two aspects: first, that there is in the harbor of New York no plant other than the libelant's capable of performing so quickly and capably the service rendered in this case; but on the other hand, that the practical monopoly enjoyed by the libelant should not enable it, in the absence of contract between itself and persons to whom its services are rendered, to charge an unfair or unreasonable rate. In the light of these two considerations the charges made by the libelant must be viewed.

The libelant has produced before me three lines of proof in support of its claim.

It has produced expert testimony as to the value of the services rendered; on this branch ·of the case it has called two witnesses. Mr. Humphrey, the treasurer of the Boston Tow Boat Company, owner of tugs, lighters and wrecking plant which have been used in raising sunken vessels by the pontoon method, testifies that in his opinion the services rendered by the libelant in this case were worth $7,000. He has had some experience, although slight, in raising dredges and the method that his company employs is not only slower than that used by the libelant but requires a less complete and powerful equipment. The other witness, Mr. Timmans, superintendent of the Baxter Wrecking Company, a company in New York which handles smaller wrecks than the libelant and which has never raised a dredge of the size of No. 12, testifies that in his opinion $5,500 would be a fair price for the services rendered by the libelant. Neither of the witnesses was, to my mind, a satisfactory expert; this was due however to the unusual and infrequent character of the work whose value they were endeavoring to fix. I have therefore given to their testimony no final or conclusive weight, but have used it as illuminative and as tending to establish a standard.

A second sort of testimony has been produced before me as tending to establish a value, namely, a price based on the cost of the service rendered, with a fair profit added. On this branch of the case, the daily cost of operation and

a charge for depreciation, have been proved before me, and it has been shown that the total cost of operating the plant for the time required in this service, including the elements above stated, was the sum of $1,719.58, an amount, however, which does not include interest on the original cost of the plant employed. As in the case of the expert testimony I have not taken this evidence as final or conclusive but only as tending to establish a basis.

A third line of proof has been produced as to the amounts which the libelant has received from other persons for similar services. On the principal case of the libelant I refused to receive such testimony, but near the close of the case the respondent called for and the libelant produced its schedule of charges in use at the time, and the officers of the libelant testified that these were their usual and regular charges, although no knowledge thereof was brought home to the respondent. Moreover, libelant rendered an itemized bill, when objection was made to the lump sum of $5,000. This bill was admitted in evidence without objection and an examination of it shows that it is based upon the schedule of charges above referred to, with an additional charge of $464 for extra compensation. It is not quite clear whether the respondent objected to the details of this bill; but I have not considered the respondent bound by it. 'The fact that the account was asked for and sent may no doubt be proved, and the instrument itself cannot perhaps be excluded; but the jury should unquestionably be told that it is not evidence of the truth of what it contains.' Shannon v. Starkey, 5 Phila. 152. In my opinion the schedule of charges of the libelant is not excessive, although as with the other sorts of proof, I do not feel myself bound thereby.

I have used these three lines of testimony for much the same purpose and in much the same manner as the court used libelant's schedule of charges in the case of Merritt & Chapman Derrick & Wrecking Company v. North German Lloyd (D. C.) 120 Fed. 17, at page 21, where the learned District Judge stated that he would give no consideration to the schedule rates, excepting so far as they might have some bearing on quantum meruit in each case as one of the elements in ascertaining a proper salvage award.

After a review of the whole case and with the help of the three sorts of testimony, I am satisfied the services were worth the sum of $4,000. I have reached this amount by disregarding the item of $464 for extra compensation and making a deduction on account of the use of the 'Monarch' instead of a smaller derrick.

I, therefore, find that the libelant is entitled to recover the sum of $4,000, with interest from July 16, 1898, amounting to $1,405.00, making in all $5,405.00."

A careful reading of pertinent parts of the testimony, in connection with the report, satisfies me that the commissioner has reached a just result. The exceptions are, therefore, overruled.

The ruling in The Paquete Habana tends to deprive this court of the aid given to it by The Commander-in-Chief, and in view of such fact, we have prepared an amendment to Admiralty Rule 52 of this court, requiring particulars of the exceptions and references to the testimony the exceptant wishes considered in support of them.