## THE FLYING SCUD.

1. A cargo shipped from a neutral country by neutrals resident there, and destined ostensibly to a neutral port, restored with costs after capture in a suspicious region, and where the vessel on its outward voyage had violated a blockade; there having been nothing to fix on the neutrals themselves any connection with the ownership or outward voyage of the vessel (which was itself condemned), nor anything to prove that *their* purposes were not lawful.

2. A part of the cargo which had been shipped like the rest, except that the shipper was a merchant residing and doing business in the enemies' country, distinguished from such residue and condemned.

APPEAL from a decree of the District Court of the United States for the Eastern District of Louisiana.

The Scud and her cargo were captured during the late rebellion, by the United States Steamer Princess Royal, at the mouth of the Rio Grande, on the 12th August, 1863, and brought into New Orleans for condemnation.

The Rio Grande, as is known, separates Texas, then in rebellion against the United States, from Mexico, then a neutral country; the position of the stream between the neutral and rebel regions having allowed, of course, great opportunities to illicit trade with Texas, under the guise of lawful trade with Mexico.*

The proofs in the case showed that the vessel was a British vessel, and had left Nassau in January, 1863, laden with a cargo of timber, tin, iron, powder, and horseshoes, and was destined ostensibly for *Matamoras, Mexico* (a place separated from Texas and the commercial town of Brownsville in it only by the dividing river). She arrived at Matamoras, that is to say, at the mouth of the Rio Grande (where, on account of a bar, vessels of any size are obliged to anchor), on the 1st of March; after remaining there a week or ten days, she sailed for Brazos Santiago, a port of Texas about nine miles from the mouth of the Rio Grande, where her cargo was discharged, and carried to Point Isabel, also in Texas.

---

* See The Peterhoff, 5 Wallace, 28, where the matter is set forth.

The vessel remained at Santiago till some time in May, when she returned to the mouth of the Rio Grande. While here at anchor she was, on the 15th July, 1863, chartered by one B. Caymari, a subject of Spain, doing business at Matamoras, as a merchant there, to carry a cargo of cotton from Matamoras to Havana. She continued at anchor at the mouth of the Rio Grande till the cargo of cotton was put on board in July and August, with which she was laden when captured. All the cotton was purchased at Matamoras, that is to say, in Mexico, and was brought from storehouses from Bagdad, the port of entry of Matamoras, or Boca del Rio, in Mexico, not far off, down the river, in lighters, to the Scud, which was anchored outside of the bar, and there loaded. There were some fifty or sixty merchant vessels at the mouth of the river at the time of the capture, and had been from the time of the Scud's first arrival there.

Hart, the owner of the vessel, and who was a British subject, put in a claim for the vessel.

Caymari, already mentioned, put in a claim, as owner of one hundred and thirty-seven bales of the cotton; Jules Aldige, a subject of France, but, like Caymari, doing business as a merchant at Matamoras, a claim for thirty-eight bales; and Lopez and Santos Coy, citizens of Matamoras, in Mexico, but who, some years before the capture, had removed to Brownsville, in Texas, a claim for thirty bales.

The court below condemned the vessel and cargo as prize of war. There was no appeal by the owner of the vessel, so that the only question here was in regard to the cotton.

*Messrs. Dunning and Donohue, for the appellants, claimants of the cotton:*

All trade between neutral ports in time of war is valid except (1) to blockaded ports, and (2) with contraband. The mouth of the Rio Grande was not and could not be blockaded so as to prevent trade with Matamoras, which is in a neutral country.

All the cotton was purchased at Matamoras, in this neutral country. The only circumstance militating against our

claim is that the vessel did once land a cargo in Texas. But the case does not show that any one of the claimants had anything to do with that voyage or even ever heard of it. Neutrals themselves, they found a neutral vessel outside the bar ready to carry their cotton to a neutral port, and they chartered her. The vessel was lying at anchor for weeks, of course in sight of the blockading fleet; and the captors seize her only after she is loaded. The claimants of the cotton had a right to suppose that she would be unmolested. They were misled by this lying by of the captors; and even if guilty, their cargo ought to be restored.*

*Mr. Ashton, special counsel of the United States, contra:*

A person carrying on trade in time of war in a region so exceedingly suspicious as from its geographical character was the mouth and lower part of the *Rio Grande*, must show a case above all suspicion. The outward voyage, which undoubtedly was meant for Texas, and was criminal, involves the present one in grave suspicion.

As to the claim of Lopez and Santos, having been merchants in a hostile country, the fact that they shipped the cotton from a neutral one, can't save it. It was enemies' property, and as such confiscable.†

Mr. Justice NELSON delivered the opinion of the court.

The proofs are full and uncontradicted, that each of the claimants purchased the cotton in question from different houses in Matamoras, and were merchants doing business there, with the exception of Lopez and Santos, who had removed to Brownsville, Texas, some year before the capture, from Matamoras, and were established in business there. It further appears from the proofs that the cotton was in the warehouses at Boca del Rio, or Bagdad, which is the port of entry for Matamoras, was carried in lighters from thence to the schooner, and taken on board. These proofs, and the greater portion of those which make the case, were produced

---

* The Neptunus, 2 Robinson, 110.
† Mrs. Alexander's Cotton, 2 Wallace, 404.

on an order for further proofs. The transaction appears free from all doubt or obscurity. The claimants, for aught that is shown, had no connection whatever with the cargo shipped from Nassau, and discharged at Brazos, or with the voyage or with the vessel, until it was chartered by Caymari to carry a cargo of cotton from Matamoras to Havana, which is dated the 15th day of July, 1863. The argument, therefore, founded on the suspicion that the claimants were connected with the breach of blockade at Brazos, in the cruise of the inward voyage, is without any foundation.

The decree below must be reversed, except as to the thirty bales claimed by Lopez and Santos. Although they are Mexican citizens, yet being established in business in the enemies' country, must be regarded according to settled principles of prize law, as enemies, and their cotton as enemies' property.

The decree below affirmed as to the thirty bales, and reversed as to the thirty-eight (38) and the one hundred and thirty-seven (137), and case remitted, with directions to enter decree for claimants, Jules Aldige and B. Caymari, restoring their cotton with costs.

DECREE ACCORDINGLY.