# THE PAQUETE HABANA.

## APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

Nos. 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589.* Argued March 19, 1903.—Decided April 6, 1903.

This court having decided in *The Paquete Habana*, 175 U. S. 677, that certain fishing smacks engaged in coast fishing for the daily market were not liable to capture, and ordered that the proceeds of vessels and cargoes be restored to the claimants with compensatory and not punitive damages and costs, and it appearing that the damages allowed were excessive, the cases were remanded to the District Court for further proceedings.

Under the circumstances of this case the decree should be entered against the United States and not against the captors individually.

THE case is stated in the opinion of the court.

*Mr. Solicitor General Hoyt* for the United States.

The court is free to weigh and settle the facts here uncontrolled by subordinate findings. The inquiry is whether the court is satisfied by the whole evidence. *The Vigilantia*, 1 Rob. 1; *The Soglasie*, Spinks, 104; *The Carlos F. Roses*, 177 U. S. 655. *The Vigilantia* and *The Soglasie* exhibit the reasonable doubt of courts respecting the certificates of national magistrates presumably complaisant toward their countrymen. Early cases in this court show that the court handles such awards with great freedom, allowing some items and rejecting others, in the exercise of its discretion. *The Apollon*, 9 Wheat. 362; *The Lively*, 1 Gall. 315; *The Charming Betsy*, 2 Cr. 64; *Maley* v. *Shattuck*, 3 Cr. 458; *The Amiable Nancy*, 3 Wheat. 546.

The claims are excessive and unconscionable, and the evidence in support of them unsatisfactory and inconclusive. The

---

*No. 578. *United States* v. *The Paquete Habana*; No. 579. *Same* v. *The Lola*; No. 580. *Same* v. *The Poder de Dios*; No. 581. *Same* v. *The Antonio y Paco*; No. 582. *Same* v. *The Engracia*; No. 583. *Same* v. *The Severita*; No. 584. *Same* v. *The Antonio Suarez*; No. 585. *Same* v. *The Fernandito*; No. 586. *Same* v. *The Oriente*; No. 587. *Same* v. *The Espana*; No. 588. *Same* v. *The Cuatro de Settembre*; No. 589. *Same* v. *The Santiago Apostol*.

witnesses are in the highest degree interested, and the inference of a combination of interest throughout the cases is irresistible. The reappearance of the same witnesses and claimants in different cases, and the corporate relations shown suggest that the ownership of these boats and the handling of their catch constituted a sort of Havana "fishing trust." The interrogatories called for candid and complete answers. Forgetfulness, failure to keep books, the omission to furnish bills of sale, statements about documents which the documents do not support— these things find no excuse in the form of the interrogatories. It was for the claimants to support their claims absolutely and completely. The harbor master's certificate is given as to all the vessels on the same day, long after the final condemnation below, appraising them as of the same date prior to the war. That officer admittedly acts as an expert appointed by the two firms chiefly interested to appraise the value of their respective fishing smacks. His testimony and certificate should not be accepted as a veritable and reasonable statement of the value of the vessels. Sufficient appears fairly to require the court to reject the exaggerated claims, and, indeed, sufficient appears to enable the court, justly and understandingly to fix the point between the prices realized at the government sale and the amounts claimed, which will give *restitutio in integrum*.

If the court thinks that a satisfactory basis of readjustment and settlement is not yet before it, then we submit that the cases should go back to the court below for further inquiry.

As to the naval captors' liability, *The Ostsee*, Spinks, 174, fully reviews the principles and authorities. The captors seize at their peril; they take the burden and the risk along with the possible benefits. The only question is whether the claimants are in fact entitled to restitution with damages and costs. *The Ostsee* decided that captors are liable; that they may afterwards be indemnified at the expense of the public makes no difference in the rule. They cannot be so indemnified by means of a judgment against the United States. It is for Congress to relieve them. The cases in this court, *Murray* v. *The Charming Betsy*, 2 Cr. 64; *Little* v. *Barreme*, 2 Cr. 170; *Maley* v. *Shattuck*, 3 Cr. 458, show that the seizors have al-

ways been held liable for restitution in value. The distinctions and qualifications as to government exemptions from liability, *The Siren*, 7 Wall. 162, speak for themselves and do not comprehend the present cases. The same remark is true of *The Nuestra Señora de Regla*, 108 U. S. 96, in which the reduction of the claim is significant, and the original hearing is instructive on the general doctrine of the government exemption from liability in the courts.

The Government by its commission and war instructions authorizes capture, but does not thereby adopt the acts of its officers as its own, or condone their errors, or assume the liability arising upon their wrongful acts, however " pure in intention " the wrong may be. Such an idea is flatly contrary to all the principles of government exemption from suit and responsibility for the acts of its officers and agents except so far as it has expressly made itself liable. The Government grants prize rights to captors, and libels on behalf of captors and itself. The Government may restore, even after libel filed, at any time before condemnation ; that fact would give disappointed captors no claim against the Government. If the executive should determine to recognize a diplomatic claim (which may be interposed after condemnation) that does not summon the captors to respond. Equally, if there is a judicial decree of restitution with damages and costs, that does not call upon the Government to respond because it files the libel and is the formal party plaintiff. The " captors," that is, the actual commander of the offending vessel representing all of his subordinates, must meet the responsibility of the illegal act of seizure.

Mistaken practice in the lower courts or inferences from particular acts of Congress granting indemnity cannot avail to overturn an established rule. As in England the appeal for relief is to Crown or Parliament, here it is to Congress. The courts cannot recognize that appeal by giving judgment against the United States, even if it should be a nugatory judgment not subject to execution. We urge with conviction that any award to claimants here must rest upon the various naval captors and not upon the United States.

*Mr. J. Parker Kirlin* for claimants.

I. No sufficient ground for the reversal of the decree is shown, so far as the *quantum* of the damages is concerned.

1. There is no serious dispute as to the principle on which the damages are to be assessed. The claimants are entitled to "fair indemnity for the losses sustained by the seizure." *The Nuestra Señora de Regla*, 17 Wall. 29, 31. The owners of the vessels being Cubans, and the vessels having been seized in Cuban waters when about to enter Cuban ports, the damages are naturally to be measured with reference to the value of the vessels and property in Cuba rather than in the United States. *Bates* v. *Clark*, 95 U. S. 204, 210. The damages to be awarded should be equivalent to the injury sustained. *The Lively*, 1 Gallison, 315; *Hetzel* v. *Baltimore & Ohio Ry.*, 169 U. S. 26. This principle is impliedly recognized in the mandates issued under the previous decision, which provided that the damages should be "compensatory."

The assessment of the damages was referred by consent to the commissioner. His conclusions, therefore, will not be disturbed, unless they are clearly in conflict with the weight of the evidence. *The Elton*, 83 Fed. Rep. 519, 520; *Kimberley* v. *Arms Co.*, 121 U. S. 512, 524; *Davis* v. *Schwartz*, 155 U. S. 631, 636; *Crawford* v. *Neill*, 144 U. S. 585, 596; *Furrer* v. *Ferris*, 145 U. S. 131. Even if the reference had not been made on consent, the conclusions of the commissioner on matters of fact would still be entitled to much weight. *Tilghman* v. *Proctor*, 125 U. S. 136, 149.

The District Judge heard argument on the libellant's exceptions to the report, and, after consideration, overruled them and confirmed the report. The case comes before the court, therefore, with the concurrent finding of the commissioner and the court in favor of the claimants. Under these circumstances the court should decline to interfere with the amount of the decrees, unless manifest error appears. *The Ship Marcellus*, 1 Black, 414; *The Conqueror*, 166 U. S. 110, 136.

2. The evidence produced on the part of the claimants consisted of the depositions of the owners of the vessels and of the harbor master in the port of Havana in relation to the value

of the vessels, and of certain disinterested fish merchants as to the value of the fish. The evidence of the libellant consisted, for the most part, of the depositions of witnesses who did not profess to have any acquaintance with the value of fishing vessel property. The commissioner heard some of the witnesses for the Government, but accepted the evidence of the claimants' witnesses as more accurate and reliable. It is contrary to the practice of the court to reverse a decree where both courts below have concurred in the decision of questions of fact, and the result arrived at depends on the number or credibility of witnesses. *The Richmond*, 103 U. S. 540, 543.

3. The exceptions to the commissioner's report are insufficient to raise any question as to the amount of the damages. The exceptions were:

"First, that the amount allowed as compensatory damages for the following vessels, and each of them, is excessive and not sustained by the evidence;" and,

"Second, that the value of each of said vessels . . . as ascertained by the commissioner is contrary to the evidence."

No suggestion was made as to the amount which the United States attorney thought the evidence would justify as an allowance for compensatory damages. Exceptions expressed in almost identical terms were held to be insufficient in *The Commander-in-Chief*, 1 Wall. 43, 50.

4. The status of the claimants does not affect their right to receive full compensation. Even if the claimants were technically in the position of enemies at the time of the captures, the court has, nevertheless, determined that their property was entitled to exemption from capture. In awarding compensation, therefore, the property is to be dealt with in the same manner as the property of friends. If its value was enhanced by reason of the war, that fact would not be material in measuring the damages except as showing the values current at the time when the right to compensation accrued. The right to compensation has been determined, and the damages are to be measured by the value of the property at the time of the capture, with interest and costs. If that value was enhanced by the military or naval operations of our Government, the claimants are, never-

theless, entitled to be paid at the enhanced amounts; for they represented the value which the property would have possessed, and at which, presumably, it could have been disposed of, but for the unlawful capture and condemnation. These observations apply alike to the valuations of the vessels, and to the current price for the fish, at the time of the capture, as to which there is no dispute.

5. There was no error in the award of interest, or the rate at which it was allowed. No question on that subject, however, is properly before the court. There was no exception to the report of the commissioner as to the rate of interest, or as to the propriety of allowing it. Nor is there any assignment of error to the final decrees on this subject. Without any exception or assignment of error on the subject, no question relating to interest appears to be before the court. *The Commander-in-Chief*, 1 Wall. 43.

Interest has always been allowed in cases of this class, not only against private captors, but against the United States. *The Apollon*, 9 Wheat. 362, 376, 379, 380; *The Charming Betsy*, 2 Cranch, 64, 125; *The Anna Maria*, 2 Wheat. 327; *The Amiable Nancy*, 3 Wheat. 546, 562, 563; *The Nuestra Señora de Regla*, 108 U. S. 92, 104. The records in the cases of *The Labuan*, Blatchford's Prize Cases, 165; *The Glen*, Blatchford's Prize Cases, 375; *The Sybil*, Blatchford's Prize Cases, 615, show awards of interest against the United States and the captors jointly. The allowance of interest was within the fair scope of the mandates as a part of the "compensatory damages" to be recovered.

In allowing the legal rate of eight per cent, which prevails by statute in the Southern District of Florida, the court followed the practice which is sanctioned by this court. *Texas & Pacific Ry. Co.* v. *Anderson*, 149 U. S. 237, 242; *The Conemaugh*, ante, p. 363; *Huey* v. *Macon Co.*, 35 Fed. Rep. 431; 1 Sedgwick on Damages, 8th ed. sec. 339. There can be no presumption that the rate of interest in Cuba, during or immediately following the war, when financial conditions were, notoriously, in an extremely unsettled condition, was less

than the legal rate prevailing in the district in which the final decrees in these cases were entered.

II. The District Judge committed no error in deciding that the compensatory damages awarded to the claimants under the mandate of this court were payable by the United States.

1. It appears to have been determined by the previous decision of the court that the compensatory damages awarded are to be paid by the United States.

It would seem that the only parties to these causes are the United States on the one hand, and the claimants of the vessels on the other.

Section 4618 of the Revised Statutes provides that "upon receiving the report of the prize master directed by the preceding section, the attorney of the United States for the District shall immediately file a libel against such prize property, and shall forthwith obtain a warrant from the court directing the marshal to take it into his custody, and shall proceed diligently to obtain a condemnation and distribution thereof." Section 4630 provides that "the net proceeds of all property condemned as prize shall, when the prize was of superior or equal force to the vessel or vessels making the capture, be decreed to the captors; and when of inferior force, one half shall be decreed to the United States and the other half to the captors."

In pursuance of these provisions libels were filed by the United States, through its attorney for the Southern District of Florida, in all the cases, and in the original decrees of condemnation it was "ordered, adjudged and decreed that the said sloop . . . and cargo are condemned and forfeited *to the United States* as lawful prize of war." Certain naval officers filed their depositions in the cases, claiming shares of the prize money.

Any intervention of this character, however, is permissible only after final decree of condemnation, and is authorized only for the purpose of enabling the court to make distribution of the proceeds of the prize. Rev. Stat. §§ 4631, 4634. It seems doubtful, to say the least, that claims to distributive shares of that portion of the prize money which, under the statutes, falls to the captors, make the officers who present them parties to the cause.

The parties who were before this court on the previous appeal were, therefore, the claimants of the vessels on one side, and the United States on the other. As between those parties the court decreed in each case that " the decree of the District Court be reversed and the proceeds of the sale of the vessels, together with the proceeds of any sale of her cargo, be restored to the claimants with damages and costs." *The Paquete Habana,* 175 U. S. 677, 714. On a subsequent day the court on motion of the Solicitor General, ordered " that the decree be so modified as to direct that the damages to be allowed shall be compensatory only and not punitive." 175 U. S. 677, 721.

This is the judgment of the court between the only parties who were before it. The plain effect of the decision appears to be that the court determined that the compensatory damages to be recovered by the claimants were to be paid by the United States. This determination must be taken as final and conclusive throughout the subsequent stages of the litigation. *The Nuestra Señora de Regla,* 108 U. S. 92, 100 ; *Clark* v. *Keith,* 106 U. S. 464 ; *Supervisors* v. *Kennicott,* 94 U. S. 499 ; *The Lady Pike,* 96 U. S. 461.

No motion was made to amend the mandate so as to provide, if it had been competent to do so, that the judgment should be against the captors as well as the United States, or that it should be against the captors alone. In the absence of such an amendment the District Court had no power or authority to enter any decree, except against the libellant of record. *In re Potts,* 166 U. S. 263, 265, 267–268.

2. If it be considered that the court below had authority, in executing the mandate, to enter a decree against the captors alone, or against the United States and the captors jointly, it was, nevertheless, justified by the practice and by precedent in entering decrees against the United States alone, as was done.

It is the settled practice in prize cases, where restitution is ordered with damages, to assess and award the damages in the original cause against the libellants therein.

This was done without question in cases that arose prior to 1861. *The Charming Betsy,* 2 Cranch, 64 ; *The Amiable*

*Nancy*, 3 Wheat. 354 ; *The Apollon*, 9 Wheat. 362. The rule was recognized by Congress in the act concerning letters of marque, prizes and prize goods, passed June 26, 1812. 2 Stat. 759, 761.

Since the enactment of the prize acts of August 6, 1861, 12 Stat. 319 ; March 3, 1863, 12 Stat. 759 ; and June 23, 1864 ; Rev. Stat. §§ 4613, 4652, it has been the practice to file all libels in prize causes in the name of the United States. No case has been found in which the United States appears as libellant and damages for unlawful capture have been awarded against the naval captors. On the contrary, the practice, since 1861, has been to award the damages against the United States alone, or, in cases where the captors have intervened before condemnation and asked to be made co-libellants, against the United States and the naval captors jointly.

The records on file in a number of cases in the District Court for the Southern District of New York in which the United States was libellant and the captors intervened and joined in the prayer for condemnation, show that judgment was entered jointly against the United States and the captors in the following form : " It is ordered and adjudged . . . that final judgment be, and the same is hereby, rendered in the above cause in favor of the claimants of said vessels and cargo against the libellants and captors for the sum of $       "
*The Glen*, Blatchf. Prize Cases, 375, final decree entered by Betts, J., October 24, 1863 ; *The Labuan*, Blatchf. Prize Cases, 165, final decree entered by Benedict, J., March 25, 1868 ; *The Sybil*, Blatchf. Prize Cases, 615, final decree entered by Blatchford, J., March 2, 1868.

In all these cases Congress passed appropriations to pay the decrees. 13 Stat. 575 ; 16 Stat. 649 ; 16 Stat. 650. Judgment was directed against the United States alone in *The Nuestra Señora de Regla*, 108 U. S. 92. The liability of the United States in such cases appears to be recognized by implication in Rev. Stat. § 4640.

3. The United States, by entering the forum as an actor, and prosecuting to condemnation, for its own and its agents' joint use, the vessels whose unlawful capture it had ratified and con-

firmed, has submitted itself voluntarily to the jurisdiction of the court, and is bound, under the universal practice in prize causes, to compensate the claimants for their loss.

These are not actions of tort against the United States. They are mere claims for the restitution of property which the Government has unlawfully taken from private individuals. The principle involved is that property which one has wrongfully taken shall be returned, or if, by the procurement of the wrongdoer, it cannot be returned in specie, its value should be returned.

If the Government had taken the vessels and applied them to its own use, instead of procuring them to be condemned and sold, without legal right, there could be no question that it would be bound to return them, or their value. *United States* v. *Russell,* 13 Wall. 623; *Clark* v. *United States,* 95 U. S. 539. It may be that this is the principle which underlies the decision in *The Nuestra Señora de Regla,* 108 U. S. 92. Nor could there be any question of the right of the prize court to order the United States to restore the vessels, if they still remained in specie and were subject to its control.

It would appear to be an extreme refinement of principle which would deprive the court of jurisdiction to determine that the United States should refund the value of the property unlawfully taken, simply because it is now beyond the power of the Government, solely in consequence of its own action, to return the vessels themselves.

No claims are made against the Government, beyond the value of the property against which it proceeded and which it caused to be condemned. They are, in substance, merely claims for restitution. Properly speaking, they are not affirmative demands against the Government for damages arising *ex delicto.* The authorities, in which the immunity of the United States from tort actions is asserted, appear to have no real application to these controversies.

The court, in previous decisions, has recognized the liability of the Government to the extent of the value of the property involved, where it has voluntarily submitted itself to the jurisdiction of the court as a plaintiff against such property. *The*

*Siren,* 7 Wall. 152, 154, 159; *Carr* v. *The United States,* 98
U. S. 436, 438; *Clark* v. *Barnard,* 108 U. S. 436, 448; *Cunningham* v. *R. R. Co.,* 109 U. S. 446, 452; *The Nuestra Señora
de Regla,* 17 Wall. 29 ; 108 U. S. 92.

The English courts also recognize the principle that a sovereign otherwise exempt from suit, may subject itself to judgment in a cross-suit, if it invokes the jurisdiction of the court
as a plaintiff. *The Newbattle,* 10 Prob. Div. 33, 35 ; *King of
Spain* v. *Hallet,* 2 Bligh (N. S.), 31, 57.

4. No error has been assigned to the decision of the court
below in awarding the damages against the United States alone,
instead of against it and the naval captors jointly. No application was made to the court below for a decree against the
libellant and the naval captors jointly. No such application
could, properly, have been made, for the reason that the naval
captors did not intervene as co-libellants and join in the prayer
for condemnation. The Revised Statutes do not contemplate
or permit an intervention of that nature. Rev. Stat. §§ 4630,
4631, 4634.

The only contention presented by the United States attorney
on this subject, was that the decree should be against the naval
captors alone. There can be no question it would seem, that
the court below rightly decided, on the record as it stood,
against that contention. The naval captors had, it is true,
taken and brought in the vessel; but their action had been
ratified and confirmed by the United States. Under the prize
acts, ratification of the captures by the Government, which
founded libels thereon, may well be taken as relieving the naval
captors from liability, even if they had been before the court
as parties. *Lamar* v. *Brown,* 92 U. S. 187; *Dobree* v. *Napier,*
2 Bing. N. C. 781. Joint decrees against the libellant and the
captors would have been of advantage to these claimants, but
as the record stood there appeared to be no ground for asking
the court to enter them in that form.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are cases of fishing smacks, which were libelled as

prize of war. The proceedings in all the cases are similar and the evidence to a large extent the same. It was decided by this court in two of the cases, *Paquete Habana* and *Lola*, 175 U. S. 677, that smacks of this sort, engaged as these were, in coast-fishing for the daily market, were not liable to capture, and decrees were ordered that the proceeds of the vessels and cargoes be restored to the claimants, with damages and costs. On motion of the United States it was ordered that the decrees be modified so as to direct that the damages should be compensatory only and not punitive. Decrees were entered in each of the above-named cases by the District Court in pursuance of this mandate, and agreements between the United States, the captors and the claimants were filed, that the damages should be charged against the United States or the captors, or apportioned, " as to justice may appertain and as the legal responsibility therefor may appear ; " saving the right to review the decrees as to amount and as to where the ultimate responsibility rested. The papers do not disclose such an agreement in the *Cuatro de Settembre*, but as the records so far as similar to the first two cases were not printed, we assume that the omission was only in the index, and that it was understood that this case should stand like the rest. The cases were referred to a commissioner to report the amount of damages. He reported his findings and the evidence. The United States excepted to the findings as excessive. The District Court entered decrees against the United States for the amounts, and the United States appealed on the grounds that the decrees should have gone against the captors and not against the Government, and that the damages were excessive and the exceptions to the commissioner's report should have been sustained.

We do not see how it is possible that a decree should be entered against the captors. There was no formal intervention by them, and whether a decree can be made against the United States or not, it has so far adopted the acts of capture that it would be hard to say that under the circumstances of these cases it has not made those acts its own. It is not disputed that the United States might have ordered the vessels to be released. It did not do so. The libels were filed by the United.

States on its own behalf, praying a forfeiture to the United States. The statutes in force seemed to contemplate that form of procedure, Rev. Stat. § 4618, and such has been the practice under them. The libels alleged a capture pursuant to instructions from the President. The captures were by superior force, so that that there was no question that the United States was interested in the proceeds. Rev. Stat. § 4630. The modification of the decrees in regard to damages, on motion by the United States, imported a recognition of the interest of the United States in that matter, and its submission to the entry of decrees against it. The agreements to which we have referred had a similar import, although they indicated an awakening to a determination to argue the form of the decree. In the case of *Little* v. *Barreme*, 2 Cr. 170, conversely to this, the United States was not a party and the captor was. All that was decided bearing upon the present point was that instructions from the President did not exonerate the captor from liability to a neutral vessel. As to even that the Chief Justice hesitated. But we are not aware that it is disputed that when the act of a public officer is authorized or has been adopted by the sovereign power, whatever the immunities of the sovereign, the agent thereafter cannot be pursued. *Lamar* v. *Browne*, 92 U. S. 187, 199; and as to ratification, *Buron* v. *Denman*, 2 Exch. 167, 187, 189; *Secretary of State in Council of India* v. *Kamachee Boye Sahaba*, 13 Moo. P. C. 22, 86. See *Dempsey* v. *Chambers*, 154 Massachusetts, 330, 332. The principle and authority of *Buron* v. *Denman* was recognized and followed by the Court of Claims in *Wiggins* v. *United States*, 3 C. Cl. 412, 423.

If we are right so far, we think that under the circumstances of this case a decree properly may be entered against the United States. The former decree of this court remains in force and requires a final decree for damages. *Re Potts*, 166 U. S. 263, 265; *McCormick* v. *Sullivant*, 10 Wheat. 192, 200. The decree must run against the United States if a decree is to be made. In *The Nuestra Señora de Regla*, 108 U. S. 92, 102, the court was of opinion that the United States had submitted to the jurisdiction of the court so far as to warrant the ascertainment of damages according to the rules applicable to private persons in

like cases. It seems to us that the facts here are not less strong. Decrees in cases which disclose no special circumstances have been recognized by subsequent statutes providing for their payment. *Glen*, Blatchf. Prize Cases, 375, act of Feb. 13, 1864, c. 10, 13 Stat. 575; *Labuan*, Blatchf. Prize Cases, 165, act of July 7, 1870, c. 220, 16 Stat. 649; *Sybil*, Blatchf. Prize Cases, 615, act of July 8, 1870, c. 231, 16 Stat. 650; *Flying Scud*, 6 Wall. 263, act of July 7, 1870; c. 219, 16 Stat. 649. See also 16 Stat. 650, c. 232; 651, c. 234.

We pass, then, to the other ground of the appeal. With regard to this it is objected that the exceptions to the master's report are not sufficient to open the question; referring to *Commander-in-Chief*, 1 Wall. 43, 50. But the objection being the general one that the evidence did not warrant the finding and all the evidence being attached to the report nothing more is needed.

On the amount of the damages we are of opinion that further proceedings must be had. We do not forget the weight that is given to the findings of a master or commissioner upon matters of fact. But this weight is largely, although not wholly, due to the opportunity, which we do not share, of seeing the witnesses. So far as the commissioner disregarded the testimony of the witnesses whom he saw we should hesitate to overrule his conclusion, although it seems too absolute on the grounds set forth. But the result reached is based on documentary evidence which is before us, and as to which we have equal opportunities for forming a judgment. It appears to us plain that this evidence was given undue weight. The source from which it comes and the high valuations require that it should be taken with considerable reserve. The commissioner had a right, which he seems to have thought that he did not possess, to chancer the estimates. He adopted the owners' prices without qualification. The certificate of the harbor master of Havana is dated November 23, 1898. It does not purport to be a copy of any earlier record. It is true that he makes his valuation as of March 1, 1898, but he does not say either in the certificate or in his testimony that he made that valuation at that or any other date before November 23. We shall not go over the

other evidence in detail.   Some at least of the vessels were old. The Paquete Habana, for instance, at least eighteen or twenty years.   One half interest was bought in 1892 for $2400.   She is valued in 1898 by owners, harbor master and commissioner at $4500.   The Lola was purchased " at a cheap price," according to the owner, in 1887.   The valuation of some of the other smacks is above the price said to have been paid for them in earlier years.

In the case of the Espana it appears that she was about fourteen years old, and cost when built ten thousand dollars.   She is valued by the owners and harbor master, agreeing as usual, at $9000.   The commissioner adopts this valuation.   Yet it appears that the vessel was resold to the owners for $2500. Whether this price was a fair value or not, and the owners would not give more, the result of the sale was that they had their boat back again.   It is apparent, therefore, that their actual loss was only what they had to pay to get it, the loss from detention of the boat and any wear and tear and changes that it had undergone in the meantime.   In a case of the present kind it would be going beyond the requirements of justice into the realm of very doubtful technicalities to disregard the fact that the vessel got back because it was due to a subsequent transaction with a stranger.   There is some evidence that the same thing happened in some or all of the other cases.   See *The Lively*, 1 Gall. 315, 321.

The fish are allowed for at the highest price in Havana during the blockade, which is too high a rate, and interest was charged at eight per cent, there being no reason apparent for charging more than six if interest was allowed.   See *Lincoln* v. *Claflin*, 7 Wall. 132, 139 ; *The Amalia*, 34 L. J. Adm. 21 ; *Struker* v. *Hartland*, 2 Hem. & Mil. 570 ; *Frazer* v. *Bigelow Carpet Co.*, 141 Massachusetts, 126.   These are details, but they show what is manifest throughout, that the owners' demands have been accepted without discrimination on evidence which does not justify the result.

We think that we have said enough to show that a revision of the findings is necessary.   It seems to us better that this revision should take place in the District Court rather than

be attempted by us. Whether further evidence shall be taken we leave to the parties and to that court.

*Decrees reversed and cases remanded for further proceedings in accordance with this opinion.*