## UNITED STATES v. NATIONAL CITY BANK OF NEW YORK et al.
### No. 237.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

Lamar Hardy, U. S. Atty., of New York City (Francis H. Horan and Clarence W. Roberts, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Shearman & Sterling, of New York City (Philip A. Carroll and Otey McClellan, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The State of Russia, on December 6, 1917, had an account in the name of three members of the Russian Mission of Ways of Communication in the United States in the Bankers Trust Company of New York. A dispute arose as to the proper party to whom to pay this deposit, and, to protect itself, the Bankers Trust Company in August, 1918, transferred the balance, $115,333.06, to the appellee bank, where it is held in an account entitled "S. Ughet, Russian Financial Attaché, segregated for Bankers Trust Company per S. Ughet's letter August 13, 1918, #1650, and B. A. Bakmeteff's letter June 14, 1922." An agreement then made provided that the fund was to be segregated on the books of the appellee until Bankers Trust Company was furnished satisfactory evidence that the fund was in fact the exclusive property of the Russian government.

In March, 1925, the Russian Financial Attaché, S. Ughet, furnished evidence that he, as representative of the Russian government, was entitled to the money. This, however, did not satisfy the Bankers Trust Company, and it refused to consent to payment. This suit was then commenced by the State of Russia against appellee, interpleading the Bankers Trust Company, for a decree directing the appellee to pay the fund to S. Ughet on behalf of the State of Russia as owner without receipt of the Bankers Trust Company's consent. The answer filed by the appellee alleged that the money transferred to it from the Bankers Trust Company was the exclusive property of the State of Russia, but that the appellee owned and held unpaid Treasury notes of the State of Russia, which should be set off against the appellant's claim to this fund because the State of Russia was a nonresident, without funds within the jurisdiction with which to pay the Treasury notes, and the appellee had no means of enforcing or compelling payment thereof except by way of set-off in this action.

It was held below that the fund was released from any claim of the Bankers Trust Company, and that the appellee was entitled to set off against the claim an equal amount of the sum owing by the claimant to the appellee on account of its ownership of the Russian government's Treasury notes. An order of severance was entered, and the State of Russia was granted an appeal without the necessity of joining the Bankers Trust Company. The United States, as the assignee of Russia by an international agreement of November 16, 1933, became the substituted appellant. State of Russia v. National City Bank of New York, 69 F.(2d) 44 (C.C.A.2).

The first question is whether Equity Rule 30 (28 U.S.C.A. following section 723) bars a set-off of the Russian debt to the bank against the balance of the deposit. Rule 30 provides: "The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him."

This suit is in equity, where it is recognized that debts should be paid, and the adjustments of demands by set-off rather than by independent suit is favored and encouraged. Insolvency of a party against whom a set-off is claimed is sufficient ground for equitable interference; so is nonresidence of the party against whom the set-off is asserted. North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 14 S.Ct. 710, 38 L.Ed. 565; Lindsay v. Jackson (1831) 2 Paige (N.Y.) 581. But cf. Green v. Farmer (1768) 4 Burr. 2214.

■ The principle of equity jurisdiction is in no way diminished or restricted by Equity Rule 30. No rule of court, even if so intended, can restrict jurisdiction. See Washington-Southern Nav. Co. v. Baltimore Co., 263 U.S. 629, 635, 44 S.Ct. 220, 68 L.Ed. 480. Indeed, Equity Rule 30 is designed to increase rather than decrease the set-offs usually permissible in equity by extending them to independent transactions. General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 434, 53 S.Ct. 202, 77 L.Ed. 408; American Mills Co. v. American Surety Co., 260 U.S. 360, 364, 43 S.Ct. 149, 67 L.Ed. 306. Under Rule 30, a legal demand cannot be set off in equity if there is an adequate remedy at law, Hyde v. Blaxter, 299 F. 167 (C.C.A.8), unless the set-off arises out of the same transaction and the plaintiff waives his right to a jury, Clifton v. Tomb, 21 F.(2d) 893 (C.C.A.4). In Chase National Bank v. Sayles, 30 F.(2d) 178, 182 (D.C. R.I.), the court, overruling a motion to strike out answers classed as counterclaims because neither could be the subject of an independent suit in equity, stated: "Equity rules are promulgated to do equity, not to defeat it." The distinction between a set-off in equity where there is no remedy at law against the plaintiff and a set-off in equity where there is an adequate remedy at law has been frequently pointed out. See Sinclair Refining Co. v. Midland Oil Co., 55 F.(2d) 42, 47 (C.C.A.4); Maryland Casualty Co. v. Board of Education, 20 F.(2d) 799, 801 (C.C.A.3). And, where special circumstances render the legal remedy inadequate, the set-off is available to a defendant in equity. Dykes v. Widdows, 31 F.(2d) 745 (C.C. A.8). It has been expressly recognized that "the argument [for allowing a set-off] is the stronger if the creditor, from any cause [its sovereign immunity], cannot be coerced to pay this demand." United States v. Mann, 26 Fed.Cas. page 1151, No.15,716.

■ There has never been any doubt either at law or in equity that one debt was equally as entitled to payment as another. The only doubt was whether the trial of the two claims in the same case was convenient. In equity, inconvenience is not allowed to accomplish an injustice by preventing a set-off if it appears that a defendant has no adequate means for recovery in a separate action.

■ The next question is whether sovereign immunity from suit bars this set-off. Set-offs against the sovereign United States have been allowed where it was plaintiff. United States v. Wilkins, 6 Wheat.(19 U.S.) 135, 5 L.Ed. 225; United States v. MacDaniel, 7 Pet.(32 U.S.) 1, 8 L.Ed. 587; United States v. Kimball, 101 U.S. 726, 25 L.Ed. 835; United States v. Ringgold, 8 Pet. (33 U.S.) 150, 8 L.Ed. 899. The Supreme Court has held, independently of any statute, that, where the sovereign brings a suit, it submits to the application of the same principles which govern private suitors. The Paquete Habana, 189 U.S. 453, 23 S.Ct. 593, 47 L.Ed. 900; The Nuestra Senora de Regla, 108 U.S. 92, 2 S.Ct. 287, 27 L.Ed. 662; The Siren, 7 Wall.(74 U.S.) 152, 19 L.Ed. 129. In The Siren, supra, the principle of a sovereign plaintiff's submission to jurisdiction was held subject to the qualification that no affirmative judgment could be entered, but in The Nuestra Senora Case, supra, an affirmative judgment against a sovereign was upheld, and the previous qualification of the right against the government was removed. This was followed in 1902 in The Paquete Habana, supra, and later reaffirmed in United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313.

■ If a sovereign state goes into court seeking its assistance, it is in accord with the best principles of modern law that it should be obliged to submit to the jurisdiction in respect to a set-off or counterclaim properly assertable as a defense in a similar suit between private litigants. The Gloria, 286 F. 188 (D.C.S.D.N.Y.). See French Republic v. Inland Nav. Co., 263 F. 410, 411 (D.C.E.D.Mo.). Where a sovereign voluntarily litigates, he must play the role of a litigant like any other suitor and abide by the consequences. See Richardson v. Fajardo Sugar Co., 241 U.S. 44, 36 S.Ct. 476, 60 L.Ed. 879; People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763; Clark v. Barnard, 108 U.S. 436, 447, 448, 2 S.Ct. 878, 27 L.Ed. 780. It is now established that, where a sovereign comes into court, he is unarmed with immunity as against the rights of a defendant who has a proper set-off to his claim. These considerations are effective in suit by governments functioning with normal powers and privileges. They are just as applicable to a suit by the State of Russia as here presented by the appeal of an assignee from Soviet Russia.

Claims arising out of the same transaction may be set off against a sovereign. The same transaction does not necessarily mean occurring at the same time. In Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370, the court said that the transaction may comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationship. The appellee was the State of Russia's banking house during the war period, and it became its creditor as well as its debtor. On May 1, 1917, the Russian government had many millions on deposit, and the government arranged to borrow eleven millions upon promissory notes payable May 1, 1918, which were discounted by the appellee. The money was used for purchases by the Russian government. The notes were payable at the bank, which was equivalent to an order to pay the same from the account of the debtor. New York Negotiable Instruments Law (Consol.Laws, c. 38) § 147; Baldwin's Bank v. Smith, 215 N.Y. 76, 80, 109 N.E. 138, L.R.A.1918F, 1089, Ann.Cas.1917A, 500; Heinrich v. First Nat. Bank of Middletown, 219 N.Y. 1, 4, 113 N.E. 531, L.R.A.1917A, 655. Moreover, the Russian government, through its agent, paid interest on these notes out of the deposit account. The funds sued for were admittedly withdrawn from the funds of the Russian government on deposit in December, 1917, before the notes matured, but after they were issued and the balance thereof sued for was returned to the appellee for credit of the Russian government after the maturity had been extended to November, 1919.

When the notes fell due November 1, 1919, the money, the subject of this litigation, was on deposit with appellee, but at that time it was subject to the rights of the Bankers Trust Company. But this subordination of rights did not defeat appellee's claims, but merely held them in abeyance until the rights of the Bankers Trust Company were terminated. This segregation was not for the benefit of the State of Russia. The Russian government's agent sent the check to the appellee for deposit to the general credit of the Russian government before the Bankers Trust Company demanded any indemnity, and it was only upon their insistence to obtain payment of the check that the segregation arrangement was set up pending their satisfaction. The Russian government's

agent wanted the money in his government's main bank of deposit. The contract provided that, if the trust company should be sued, the amount in question was to be returned to the trust company, and, if thereafter the suit terminated in favor of the trust company, in that event the sum together with interest allowed by the trust company should again be returned to the appellee for the account of the Russian government. As soon as the superior rights of the trust company were satisfied in 1925, the rights of the appellee as a holder of the promissory notes of its depositor became paramount and, in doing justice with regard to the subject-matter of this litigation, judicial enforcement of these rights is required. Cf. United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379. In these circumstances it appears that the State of Russia held a deposit to its credit at the bank, the bank owned promissory notes of that depositor payable at the bank, and, when sued, the bank properly resisted to the extent of its set-off. The United States suing, having no more rights than its assignor, is subject to that set-off. When a sovereign sues, it may not expect a preferred status, for its suit is determined according to the rules applicable to private suitors in like cases. Denver & R. G. R. Co. v. United States, 241 F. 614 (C.C.A.8); Mountain Copper Co. v. United States, 142 F. 625, 629 (C.C.A.9); United States v. Barber Lumber Co. (C.C.) 169 F. 184; Walker v. United States (C.C.) 139 F. 409; United States v. Mann, 26 Fed.Cas. page 1151, No.15,716. The Russian government as a sovereign had no position superior to that of our own government, and its claim was subject to the same set-offs.

The authorities relied upon by the appellant are not inconsistent with the views here announced. United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598, and Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108, merely hold that, in a direct suit against the government brought under authority of a statute giving express consent to be sued, the suit must come within the express terms of the statute. Since the government cannot be sued without permission, the terms of the permission must be complied with in all suits initiated against it on the basis of such permission.

In both the Nuestra Senora de Regla, 108 U.S. 92, 2 S.Ct. 287, 27 L.Ed. 662,

and the Paquete Habana, 189 U.S. 453, 23 S.Ct. 593, 47 L.Ed. 900, cases relied on by the appellant, affirmative judgment against the United States for damages was allowed. In The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299, the question was whether the United States, which had taken no proceedings in court, could be brought in involuntarily by a libel issued against a vessel belonging to the United States, and it was held that it could not, upholding the principle that the sovereign cannot be sued without its consent. Dexter & Carpenter v. Kunglig Jarnvagsstyrelsen, 43 F.(2d) 705 (C.C.A.2), also referred to, decided only that, when a sovereign brings suit and the defendant counterclaims and obtains an affirmative judgment, nevertheless execution cannot be issued upon such a judgment against the property of the sovereign in this country in satisfaction of the judgment. These principles are well established but quite irrelevant.

In the case at bar, there would be no justice in denying the right of set-off, and the judgment must be affirmed.

Judgment affirmed.