## DANFORTH v. UNITED STATES.*
### No. 11255.

Circuit Court of Appeals, Eighth Circuit.
March 4, 1939.

*Rehearing granted March 24, 1939.

J. L. London, of St. Louis, Mo. (Leahy, Walther, Hecker & Ely, of St. Louis, Mo., on the brief), for appellant.

Charles R. Denny, Jr., Atty., Department of Justice of Washington, D. C. (Carl McFarland, Asst. Atty. Gen., L. John Weber, of St. Louis, Mo., and William R. Sherwood, of Washington, D. C., Sp. Attys., and Oscar A. Provost, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment entered in condemnation proceedings brought by the United States to obtain flowage rights over certain tracts of land located in Mississippi and New Madrid Counties, Missouri, pursuant to the provisions•of the Mississippi River Flood Control Act of May 15, 1928, 45 Stat. 534, 33 U.S.C.A. § 702a et seq. The appellant, claiming ownership of 1,033.56 acres designated in the record as Tract No. 243, seeks to contest the award of $17,921.70 reported by the commissioners and confirmed by the district court as damages for the condemnation of a flowage easement over this tract on the ground that the damages should have been determined to be $31,681.98 in accordance with the terms of a contract previously executed by the parties.

The provision of the Act of May 15, 1928, pertinent to this appeal is as follows: "The Secretary of War may cause proceedings to be instituted for the acquirement by condemnation of any lands, easements, or rights of way which, in the opinion of the Secretary of War and the Chief of Engineers, are needed in carrying out this project, the said proceedings to be instituted in the United States district court for the district in which the land, easement, or right of way is located. In all such proceedings the court, for the purpose of ascertaining the value of the property and assesssing the compensation to be paid, shall appoint three commissioners, whose award, when confirmed by the court, shall be final. When the owner of any land, easement, or right of way shall fix a price for the same which, in the opinion of the Secretary of War is reasonable, he may purchase the same at such price," etc. 33 U.S.C.A. § 702d.

Acting under the authority of this statute and in accord with a Presidential Proclamation of December 11, 1928, the Secretary of War directed that offers for flowage easements be made to owners of land within the Birds Point-New Madrid Floodway project on the West side of the Mississippi River opposite Cairo, Illinois. This order was transmitted through the regular military channels and accordingly the following letter was sent to the appellant.

"War Department
"U. S. Engineer Office
"1006 McCall Building
"Memphis, Tenn.
"Jan. 14, 1932.
"Subject: Offer for flowage rights, Bird's Point-New Madrid Floodway.
"To: Mr. W. H. Danforth,
"% Purina Mills,
"St. Louis, Mo.

"1. The Secretary of War has authorized payment for flowage easements in the Bird's Point-New Madrid Floodway, either at the maximum rates authorized by order of President Coolidge, Dec. 11, 1928, or at the appraised values of flowage as recently determined by the Department of Agriculture, where such appraisals exceed the rates authorized by the executive order mentioned.

"2. I am accordingly directed by the Chief of Engineers, U. S. Army, to offer you Thirty-one thousand six hundred eighty-one and 98/100 Dollars ($31,681.98) for a perpetual flowage easement as contemplated by the Act of May 15, 1928, on the inclosed plat, this being the maximum amount that can be offered you under the above authorization.

"3. Should this offer be accepted, friendly condemnation proceedings will be entered in Court, with the request that an agreed verdict be awarded in the amount of this offer. Payment cannot be made without Court action as title cannot be cleared. Acceptance of this offer should expedite final settlement and reduce legal expenses.

"4. If your acceptance is not received in this office during the next thirty days, it will be assumed that you reject this offer. If acceptance is made, sign and return original of offer. A return addressed envelope which requires no stamp is inclosed.

"Very truly yours,
"Brehon Somervell,
"Major, Corps of Engineers,
"District Engineer."

The appellant accepted this offer on March 2, 1932, having been granted an extension of time to March 15, 1932, in which to make his decision. On July 8, 1932, Major Somervell wrote to the appellant saying: "It is regretted that after a careful review of the question of flowage over these tracts it was found that the prices first suggested could not be properly recommended to the court. It is not feasible for this office to recommend for an agreed verdict prices in excess of what are considered fair and reasonable prices by higher authority. As all flowage cases are to be presented to the court, this office is confident that just compensation will be awarded in all cases." This letter was written as a result of the issuance of an order by the Secretary of War on April 7, 1932, that certain offers, including that made to the appellant, should be withdrawn for the reason that they were considered greatly in excess of actual values.

On September 25, 1933, the United States filed this suit seeking condemnation of flowage rights over the lands of the appellant and others, alleging inability to agree with the defendant claimants upon the compensation to which they were entitled and praying that the court appoint disinterested commissioners to assess and award the damages occasioned by the easement. Throughout the subsequent proceedings in the court below the main contention of the appellant was that in so far as the issue of damages in respect of Tract No. 243 was involved in this action it had been previously determined by the contract between the parties, hereinbefore set out. This contention was urged to the court in the form of exceptions to the various awards reported by the commissioners, by motion to vacate the awards and to enter judgment in favor of the appellant in the sum of $31,681.98, with interest from the time of taking, and by an answer and "counter-claim" setting forth the facts relative to the prior contract between the parties with a tender of title to the flowage easement upon condition that the United States pay $31,681.98 into court and with a prayer that the court enter judgment in that sum. The trial court ruled adversely to the appellant's contention in every form in which it was raised.

The errors assigned by the appellant relate almost exclusively to the court's failure to enter judgment for the amount agreed upon in the contract between the parties. No question is raised as to the right of the Government to condemn the easement or to the regularity of the proceedings below aside from the contention that the court was without jurisdiction to appoint commissioners to assess the damages, that the commissioners were without jurisdiction to assess an amount different from that agreed upon in the contract with the Government and that the court should have entered judgment for that sum.

In this appeal the appellant continues to urge that he was entitled to have his damages determined under the prior agreement with the Government and that the lower court was in error in appointing commissioners to make an assessment based upon actual values. On its part the Government admits that a valid and binding contract to purchase the flowage easement involved for $31,681.98 was entered into with the appellant and subsequently repudiated. It contends, however, that sovereign immunity from suit deprived the trial court of jurisdiction to render an affirmative judgment on a contract claim of this amount; that the appellant must pursue his remedy in the Court of Claims; and that in condemnation proceedings the court is limited to the procedure defined by the statute.

The most persuasive aspect of the appellant's argument is his contention that no separate claim is being asserted against the government. He observes that compensation in some amount was contemplated under the Fifth Amendment, U.S.C.A. Const., and the Flood Control Act of May 15, 1928; and that in this case the court was not required to determine the exact extent of the damages or to appoint commissioners for that purpose but merely to enter judgment in the amount determined by the previous agreement of the parties. But however appealing that argument is and however desirable it may be to determine all related issues in one proceeding the conclusion can not be escaped that the appellant's contention is founded upon an attempt to enforce a contractual obligation of the United States and necessarily involves the question of the jurisdiction of the district court to determine the issue and enter judgment.

It is the settled rule that a sovereign state cannot be sued without its consent, and this is true whether the issue is raised by direct suit or otherwise. Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 107, 45 S.Ct. 25, 69 L.Ed. 190; Illinois Central R. Co. v. Public Utilities Comm., 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425; Davis v. O'Hara, 266 U.S. 314, 45 S.Ct. 104, 69 L.Ed. 303; Bigby v. United States, 188 U.S. 400, 401, 23 S.Ct. 468, 47 L.Ed. 519; North Dakota-Montana W. G. Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484. The jurisdiction of a federal court to entertain claims against the United States must depend upon a specific act of Congress unless the Government places itself in the position of a private suitor and thereby impliedly consents to abide by an adverse determination of the issues involved. Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Nassau Smelting & Refining Works v. United States, supra; Keifer & Keifer v. Reconstruction Finance Corp., 8 Cir., 97 F.2d 812; North Dakota-Montana W. G. Ass'n v. United States, supra; United States v. Skinner & Eddy Corporation, 9 Cir., 35 F.2d 889; Schroeder v. Davis, 8 Cir., 32 F.2d 454; United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313; The Paquete Habana, 189 U.S. 453, 23 S.Ct. 593, 47 L.Ed. 900; The Gloria, D.C., 286 F. 188; Carr v. United States, 98 U.S. 433, 25 L.Ed. 209; The Siren, 7 Wall. 152, 19 L.Ed. 129; United States v. National City Bank of New York, 2 Cir., 83 F.2d 236, 106 A.L.R. 1235; United States v. Stephanidis, D.C., 41 F.2d 958.

The appellant does not rely on specific statutory authority to support his contention. In fact he is forced to avoid the limitations of the Tucker Act which establishes jurisdiction in the district courts concurrent with the Court of Claims to hear certain classes of claims against the United States. Section 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20), provides that "The district courts shall have original jurisdiction as follows: * * * Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court; * * *."

It is at once manifest that had the United States chosen not to institute condemnation proceedings against the appellant's property his only recourse would have been to assert a right of recovery in

the Court of Claims for damages for the breach of the contract to purchase a flowage easement. The Government, however, has instituted condemnation proceedings and the appellant strenuously urges that by so doing it has submitted itself to the jurisdiction of the district court to hear and determine all claims related to the subject matter of the suit.

It is true that it has been held that when the Government comes into court to enforce a claim it comes not as a sovereign but as a suitor and thereby submits to the court's adjudication of just claims relating to the subject matter involved even to the extent of becoming subject to an affirmative judgment; and this in spite of the fact that the court has no express statutory authority to enter such a judgment. United States v. The Thekla, supra; The Paquete Habana, supra; The Siren, supra; The Nuestra Señora de Regla, 108 U.S. 92, 2 S.Ct. 287, 27 L.Ed. 662; The Gloria, supra. The rule has been thus broadly stated in decisions in admiralty, perhaps arising out of the necessity of determining intricate problems of liability in prize and collision cases in one action. See The Gloria, D.C., 286 F. 188, 203. But we have not been referred to any decision outside of admiralty in which the rule has been given the scope of permitting a defendant to recover an affirmative judgment in a suit instituted by the United States. Its application has been limited to the extent of permitting the defendant to assert a right of recoupment, set-off or counterclaim not exceeding the amount of the Government's claim and arising out of the same transaction or subject matter. Bull v. United States, supra; Gratiot v. United States, 15 Pet. 336, 10 L.Ed. 759; United States v. National City Bank of New York, supra; United States v. Stephanidis, supra; and see United States v. Guaranty Trust Co. of New York, 2 Cir., 91 F.2d 898. In these cases it is frequently stated that the United States enters court as a private suitor and the rules applicable to individuals apply. See Bull v. United States, 295 U.S. 247, 261, 55 S.Ct. 695, 79 L.Ed. 1421; United States v. The Thekla, 266 U.S. 328, 340, 45 S.Ct. 112, 69 L.Ed. 313; United States v. National City Bank of New York, 2 Cir., 83 F.2d 236, 238, 106 A.L.R. 1235.

█ Two considerations bar the appellant's contention that this principle is applicable in the instant case. The first is that in the exercise of the right of eminent domain the United States is asserting a privilege inherent solely by virtue of sovereign power. Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L. Ed. 539. In instituting proceedings to condemn an easement over the appellant's property it can not be said that the Government entered court as a private suitor. It entered court to condemn property for a public use in the exercise of its sovereign power and in no way laid aside its protective cloak of immunity from suit. The second consideration is that the appellant is not attempting to assert a claim in opposition to a money demand brought against him but is seeking to have his damages in a condemnation suit determined according to his contract with the Government rather than by the mode provided by the statute, supra. This contention clearly amounts to an attempt to enforce the contract in this proceeding. The trial court had no jurisdiction to entertain his demand.

These conclusions do not conflict with the decision in Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, the holding in which the appellant insists is determinative of the issue in the instant case. In that case the United States instituted proceedings to condemn a certain tract of land. Appraisers were appointed who fixed the value of the land at $8.50 per acre. The court overruled the owner's exceptions to their report and entered an order condemning the property. On appeal the court found that the parties had completed an option contract, somewhat similar to the contract before this court, fixing the value of the land at $8.50 per acre. Accordingly it was held that the defendant vendor was bound by the contract price, the court stating that while the commissioners in the condemnation proceedings were not bound by that price a party to the option could not complain that the price fixed therein was adopted by the commissioners. For that decision to be in point in this case it would have been necessary for the Government to have complained that the commissioners had adopted a value higher than the price fixed by the contract between the parties. But even assuming that the Wachovia case holds that in a situation similar to the one here presented the Government was enabled to hold the condemnee to his contract

10

it does not follow that the converse of that proposition is true. The Government, in asserting its rights, is not bound by the same restrictions that hamper individual litigants. If a claim against the Government exceeds a certain amount the only forum open to the claimant may be the Court of Claims.

 The appellant contends that he is entitled to receive interest from the time of the taking. See Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S. Ct. 354, 67 L.Ed. 664; Shoshone Tribe v. United States, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360. The Government concedes this to be the rule but contends that the point has not been properly preserved in the appellant's assignment of errors since the request to the lower court for interest is linked with that for entry of judgment in the amount set out in the contract between the parties; the argument is that the United States is not liable for interest on a contract claim unless a contrary intention is indicated in the contract itself or by statute. The appellant is clearly entitled to interest as part of his damage and while he has not preserved that point as carefully as he might have done his requests to the court appear to have been made in that connection and it is immaterial that they were incident to his demands for recognition of the contract claim.

 It remains to determine the date of the taking. The evidence is undisputed that the set-back levee was started by the Government on October 21, 1929, and that it was 98.9 per cent completed on October 31, 1932. Since the latter date no further work aside from repairs has been done on it and the project was actually placed in operation and the land flooded in 1937. We have not been referred to any case in which the issue was distinctly raised of whether a taking occurs at the time the work is started or when it is completed so far as the right to interest is concerned. The dictum in Hurley v. Kincaid, 285 U. S. 95; 103, 52 S.Ct. 267, 76 L.Ed. 637, that the taking occurs as soon as the Government begins to carry out the authorized project appears to receive support in the cases cited. See, also, Shoshone Tribe v. United States, supra. It follows that interest should have been allowed from October 21, 1929, to the date of judgment.

The order is that the judgment be modified accordingly, and as so modified affirmed.

Modified and affirmed.