Gesford v. Star Van & Storage Co.

---

WILLIAM GESFORD, APPELLANT, v. STAR VAN & STORAGE COMPANY, APPELLEE.

FILED APRIL 17, 1920.   No. 20987.

1. **Bailment: CONTRACT: TERMS.** The parties to a bailment may diminish the liability of the bailee by special contract, and the bailee may impose whatever terms he chooses, if notice thereof

be given to the bailor, and he understands and assents to them, provided the contract is not in violation of law or of public policy, and does not undertake to exempt the bailee from the consequences of his own fraud or negligence.

2. ——: ——: ——. Where a building operated by a bailee for hire for storage purposes is without equipment or facilities for heating or for regulating the temperature, such bailee may, as a condition to the acceptance for storage of property likely to be damaged by heat or cold, by special contract relieve himself from liability for damage resulting from changes in the temperature which the building is not equipped to guard against or prevent.

3. ——: ——: ——. If a bailee, operating for storage purposes a building not equipped with heating facilities, notifies the bailor that he will not accept the property and be responsible for freezing, and that the risk of freezing must be assumed by the bailor, and the bailor understands and assents to such condition, the care which the bailee is required to exercise to protect the property is to be measured by the means and facilities at his disposal when the contract of storage was made, and the bailee is under no duty to provide other means of heating the building.

4. Appeal: Instruction: Harmless Error. Where the verdict returned by the jury was the only one justified by the evidence, inaccuracy in an instruction as to the burden of proof is not ground for reversal.

Appeal from the district court for Lancaster county: William M. Morning, Judge. *Affirmed.*

*Burkett, Wilson & Brown,* for appellant.

*Henry F. Guile, contra.*

Dorsey, C.

This action is to recover damages for apples frozen while in storage in a building operated by defendant for storage purposes in the city of Lincoln. The verdict and judgment were for the defendant, and the plaintiff appeals.

In his petition the plaintiff averred that in November 1917, he entered into a contract with the defendant to store apples in its storage warehouse, and that, in accordance therewith, they were stored in the basement of the building; that he removed some of the apples

during November and December, but that the remaining 275 barrels were frozen and greatly damaged during the following January, because the defendant negligently permitted the basement where they were stored to become too cold.

The defendant, in its answer, pleaded that it had never operated a cold storage warehouse, and that the plaintiff well knew that its building contained no facilities for regulating the temperature; that, at the time the arrangements were made for storage, the plaintiff inspected the warehouse and selected that part of the basement in which he desired the apples to be stored, and that he then and there assumed all risk of loss or damage to the apples by freezing.

The record shows, without dispute, that the basement of the building where the apples were stored was divided by a partition wall into two rooms, each 70 feet by 45 feet in size. The room south of the partition was filled up at the time the plaintiff went to arrange for storage and the north room was alone available for storing the apples. There was a furnace in the south room, which incidentally threw out some heat there, but which was designed to heat the office upstairs, and not the basement. There were no facilities for heating the basement, and it was no part of the defendant's plan in the operation of its storage business that the basement should be heated. The only way by which any heat from the south room could reach the north room of the basement was through a door in the partition, which, however, was habitually kept closed. There is no evidence to indicate that, if it had been kept open, there would have been enough heat to materially raise the temperature in the north room.

When the plaintiff went to the defendant's office with a view to arranging for storage, an agent of the defendant went with him into the basement. They passed through the south room into the north room. The plaintiff made no inquiry or examination as to the facilities

for heating. Nothing was said by either party as to there being no method of heating the north room. The plaintiff testified that he inquired whether anything was ever frozen there, and that the defendant's agent answered in the negative. The latter testified, however, that he cautioned the plaintiff as to the risk of apples freezing in the north room and explicitly told him that it must be at his risk. The plaintiff denied that any such statement was made.

The trial court submitted to the jury the following interrogatory: "By the terms of the agreement under which said apples were stored in defendant's basement, did the plaintiff agree to assume the risk of freezing?" To which the jury answered: "Yes." The jury were instructed that, if they found that such risk was assumed by the defendant under the contract, "the defendant owed no affirmative duty to the plaintiff to protect said apples from freezing; it owed no duty to furnish heat for said basement, nor did it owe any duty in that event to make any changes or alterations of any kind in said basement to protect said apples from the result of low temperature, and if you find the contract was as defendant contends in said particular your verdict will be for the defendant."

The plaintiff contends that this instruction was erroneous, for the reason that under section 7472, Rev. St. 1913, the defendant could not contract for exemption from liability for failure to exercise such care with regard to goods stored "as a reasonably careful owner of similar goods would exercise;" that, notwithstanding any contract to the contrary, it was still the duty of the defendant to exercise ordinary care to protect the apples from freezing, which in this case, the plaintiff argues, required it to provide heat for the north basement, where the apples were stored.

"The parties to a bailment may diminish the liability of the bailee by special contract, the principle being that the bailee may impose whatever terms he chooses, if he

gives the bailor notice that there are special terms and the means of knowing what they are; and, if the bailor chooses to make the bailment, he is bound by them, provided the contract is not in violation of law or public policy, and that it stops short of protection in case of fraud or negligence of the bailee." 6 C. J. 1112, sec. 44.

In the instant case the defendant was entitled to attach whatever conditions it saw fit to the acceptance of the apples for storage, provided the plaintiff understood and assented to them, and that the contract did not assume to exempt the defendant from the consequences of its own negligence. The defendant's warehouse was not equipped for heating, and it was not in the regular line of its business to undertake to store property the preservation of which required the temperature to be regulated. It was, therefore, entitled to make its contracts conform to the limitations of its equipment and to confine them within the scope of its ordinary business. No rule of law governing bailments would forbid the defendant to make a contract to protect itself from liability for damages arising from some cause that could not be guarded against by the use of the ordinary means and facilities at its disposal.

In insisting upon the condition that it should not be responsible for freezing, the defendant did not thereby stipulate for exemption from liability for negligence. It merely foresaw and stipulated against a possibility which it was powerless to avert without other and greater facilities than it possessed. By assenting to that condition and assuming the risk of freezing, the plaintiff, in effect, agreed that the defendant's duty of reasonable care for the protection of the property should be limited to the means actually at its disposal in the ordinary course of its business, taking into consideration the lack of facilities to heat the warehouse. It became the defendant's duty then only to see that the apples were exposed to no greater risk of freezing than was naturally incident to their storage in a building which

had no heating facilities, and did not extend to providing special means for heating.

There is nothing in the record to indicate that anything that could have been done was not done to protect the apples, except, as the plaintiff suggests, that stoves might have been put up in the basement. Under the circumstances, however, we cannot say that the failure of the defendant to set up stoves constituted negligence.

In *Denver Public Warehouse Co. v. Munger,* 20 Colo. App. 56, relied upon by the plaintiff, apples were stored in a public warehouse for which a receipt was issued bearing upon its face the words "at owner's risk." The apples were damaged by freezing, and the plaintiff recovered a verdict and judgment, which was affirmed. The negligence claimed was in not exercising ordinary care to protect the apples against the cold weather. The facilities for heating included oil stoves, but these were not utilized. There was no evidence of any contract limiting the liability of the warehouseman, or of any assumption of the risk of freezing by the bailor, unless such a contract could be implied from the words, "at owner's risk," on the receipt. The supreme court of Colorado held that these words did not have the effect of releasing the bailee from the exercise of ordinary care, and that, under the circumstances of the case, ordinary care required the bailee to make use of its oil stoves.

The features that distinguish the case just referred to from the instant case are: (1) The absence in the Colorado case of any positive agreement on the part of the bailor to assume the risk of freezing, or of any affirmative notice to him by the bailee that it would not accept the apples for storage and be responsible for freezing; (2) the bailor in the Colorado case had no reason to suppose that the warehouse would not be so heated as to protect the apples from freezing, and the warehouse appeared to be suitable for that purpose; and (3) the bailee

had facilities for heating by means of oil stoves, which it failed to make use of.

Before he entered into the contract, the plaintiff in the instant case was fully advised that the defendant would not accept the apples for storage and agree to protect them against freezing, and the plaintiff definitely assumed that risk. In the face of that explicit understanding, he is in no position to urge that he had no reason to suppose that the defendant's warehouse would not be so heated as to guard against freezing, and it moreover clearly appears that the defendant, in the ordinary course of its business, neither possessed nor professed to have facilities for heating the building.

The plaintiff also complains of an instruction placing upon him the burden of proving that the defendant did not use ordinary care. He points to the rule announced in *Davis v. Taylor & Son*, 92 Neb. 769, that, when a bailee returns the goods in a damaged condition, the burden is upon him to show that the damage did not occur through his negligence. The jury in the instant case, however, were instructed that the burden of proof was upon the defendant to establish the special contract whereby the plaintiff assumed the risk of freezing. Having determined that issue in favor of the defendant, no other verdict was possible under the law and the undisputed evidence than the one which was returned by the jury. In the light of the special contract, it conclusively appeared from all the evidence that the defendant was not negligent, and any error in the instruction with reference to the burden of proof of negligence could not have been prejudicial to the defendant. *Bradley v. Chicago, B. & Q. R. Co.*, 90 Neb. 28.

We recommend that the judgment of the court below be affirmed.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

Affirmed.