**KEIFER & KEIFER v. RECONSTRUCTION FINANCE CORPORATION et al.***

No. 11019.

Circuit Court of Appeals, Eighth Circuit.

July 7, 1938.

*Rehearing denied Aug. 9, 1938.

Arthur E. Perry and Robert Van Pelt, both of Lincoln, Neb. (Ernest B. Perry and Lloyd J. Marti, both of Lincoln, Neb., on the brief), for appellant.

Francis P. Matthews, of Omaha, Neb. (William P. Kelley, of Omaha, Neb., on the brief), for appellee Reconstruction Finance Corporation.

L. W. Powers, of Denison, Iowa (C. J. Thurston, of Omaha, Neb., on the brief), for appellee Regional Agricultural Credit Corporation of Sioux City, Iowa.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an action at law for the recovery of damages for alleged acts of negligence. Appellant was plaintiff below, and appellees were defendants. Counsel for appellant in their brief, in referring to the parties, say: "The plaintiff and the plaintiff's four assignors will all be referred to herein by the use of the word 'plaintiff.' The defendant, Reconstruction Finance Corporation, will be designated and referred to herein as 'RFC' and the Regional Agricultural Credit Corporation will be designated herein as the 'Regional.'" Counsel for the respective appellees have adopted this suggestion of appellant, and we shall accordingly so designate the parties in this opinion.

The petition sets forth, in separate counts, five alleged causes of action. Of these five causes of action, four are brought by plaintiff as assignee, while the other is brought by him in his own right. In all of the five causes of action, it is alleged that plaintiff delivered to the Regional Agricultural Credit Corporation certain cattle, which, in violation of its contract duty, it negligently kept, resulting in damage to plaintiff and his assignors. After the cattle were turned over to Regional a written contract was executed, which in terms purported to release Regional from liability in the care of the cattle. So far as the first four causes of action are concerned, it is alleged that this contract containing a release of liability was obtained by fraud and duress.

The defendants interposed demurrers to the petition, which, while separate, set up substantially the following grounds: (1) That the court had no jurisdiction of the defendants, nor of the subject matter, because the defendants were immune from suit without the permission of Congress; and (2) that the petition and supplemental petition did not state facts sufficient to constitute a cause of action against the defendants, or either of them.

The court sustained the demurrers, expressing the view that the defendants were instrumentalities of the United States, and

hence, were immune from suit in an action sounding in tort, without the permission of Congress. The court thereupon dismissed the action, and this appeal is from the judgment of dismissal.

When this case was orally argued, we were of the view that the petition did not state facts sufficient to constitute a cause of action and therefore the dismissal was properly sustained, regardless of whether the defendants were subject to suit. We then thought that the clause in the contracts of bailment, which purported to release Regional from liability for loss on account of death, injury, or disappearance of the cattle which were the subject of the contract, was a valid limitation on the liability of the bailee, and as there was no statute in Nebraska rendering such a stipulation void, the question was one of general law on which the Federal Court would follow its own decisions. Since the argument of the case, however, the opinion in Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, has been handed down, and under the decision in that case, it is incumbent upon this court to follow the decisions of the highest court of the state in matters of substantive law. Under the decisions of the Supreme Court of Nebraska, a bailee may not, by contract, exempt himself from the consequences of his own negligence. School District v. Randall, 5 Neb. 408; Anderson v. Imhoff, 34 Neb. 335, 51 N.W. 854; Gesford v. Star Van & Storage Co., 104 Neb. 453, 177 N.W. 794. The contract was a Nebraska contract and the cause of action arose in that state. The question of the validity of the contract must therefore be decided by the law of Nebraska. It is necessary to consider the question whether the defendants as governmental agencies are immune from action.

So far as the defendant Reconstruction Finance Corporation is concerned, the demurrer was clearly properly sustained. On September 10, 1932, that corporation, pursuant to Act of Congress, created the defendant Regional Agricultural Credit Corporation, of Sioux City, Iowa. By Executive Order, the President transferred control of the defendant Regional Agricultural Credit Corporation from Reconstruction Finance Corporation to the Farm Credit Administration. This order became effective sixty days subsequent to its date. The transfer, however, was actually made approximately a year and a half prior to the time of the transactions and acts complained of by the plaintiff. The Reconstruction Finance Corporation could not, therefore, be held liable.

It remains to consider whether Regional Agricultural Credit Corporation is such a governmental agency as to be immune from suit. The Reconstruction Finance Corporation was authorized by Act of Congress, 15 U.S.C.A. § 605b (e), to create "in any of the twelve Federal land-bank districts where it may deem the same to be desirable a regional agricultural credit corporation with a paid-up capital of not less than $3,000,000, to be subscribed for by the Reconstruction Finance Corporation and paid for out of the unexpended balance of the amounts allocated and made available to the Secretary of Agriculture under section 602 of this title [Title 15 U.S.C.A.]. Such corporation shall be managed by officers and agents to be appointed by the Reconstruction Finance Corporation under such rules and regulations as its board of directors may prescribe." Following the enactment of this statute, the Reconstruction Finance Corporation issued a charter to Regional Agricultural Credit Corporation of Sioux City, Iowa, its paid up capital coming from public funds as directed by the Act of Congress. It selected the personnel to have charge of the funds and to loan them to farmers and stockmen, as provided in the Act. It issued detailed instructions for the guidance of those in charge relative to the method and manner of operation. The operations of Regional were placed on a government basis; its telegrams were given a government rate; its officers and employees were required to subscribe to the standard form of oath required of officers and employees of the United States; the making of any false statements in an application for a loan was made an offense against the Government of the United States. It was not required to pay postage, but was recognized as having the franking privilege; it was relieved of the obligation to pay a capital stock tax because it was an instrumentality of the United States; it was relieved from obligation to pay clerks' and marshals' fees in cases filed in the Federal Courts; it was not required to pay the Federal stamp tax. Regional was not permitted to deposit any of its funds in any bank other than the Federal Re-

serve Bank or one of its branches, and when the funds were so deposited, they were transmitted to the Treasurer of the United States, who held them, together with the capital funds, under a symbol account in the Treasury of the United States. Moneys loaned by Regional or expended by it were paid by checks and vouchers drawn on the Treasurer of the United States. Upon the reduction of its capital, the funds representing such reduction were deposited with the Treasurer of the United States, to the credit of a revolving fund provided for in Section 84 of the Farm Credit Act of 1933 (12 U.S. C.A. Sec. 1148a). When capital funds of the Regional were not needed for its operation, they were subject to use as a part of the capital of other Regionals, or for such other purpose as Congress might by statute subsequently direct.

■ The Government of the United States is not subject to suit without its consent, and this consent is expressed only by a statute permitting suit against it, and the courts can not go beyond the letter of such consent where it has been expressed. United States v. Turner, 8 Cir., 47 F.2d 86; North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484; Posey v. Tennessee Valley Authority, 5 Cir., 93 F.2d 726. It is conceded that there is no statute expressly consenting that Regional may be sued, so that the inquiry is whether from the nature of the agency, an intent on behalf of Congress to make this agency subject to suit may be inferred. Ballaine v. Alaska Northern Ry. Co., 9 Cir., 259 F. 183.

■■ It is to be observed that Regional Agricultural Credit Corporations are not created under the general incorporation laws of any state or territory, which laws would ordinarily make the corporation so formed amenable to action in any court. They are creatures of Federal legislation. They are not managed nor controlled as ordinary corporations. Their capital comes directly from the Federal Government, and it is not invested in capital stock because there is no capital stock. There is no board of directors, and there are no stockholders, as in the case of a commercial corporation. Management is by officers and agents appointed by the Farm Credit Administration, or, prior to the transfer, by the Reconstruction Finance Corporation. In no sense is the corpora-

tion a private corporation or a commercial corporation and as such subject to action. Kansas City Bridge Co. v. Alabama State Bridge Corp., 5 Cir., 59 F.2d 48. In North Dakota-Montana Wheat Growers' Ass'n v. United States, supra, this court, in an opinion by the late Judge Kenyon, among other things, said (page 576):

"Where the government has intended that one of its agencies shall be subject to suit it has provided therefor in the creative act."

Thus, it will be observed with reference to corporations created by Acts of Congress, that the statutes creating them usually contain specific provision that they may sue and be sued. An examination of forty-three separate Acts of Congress creating governmental corporations discloses that the statutes creating them, with but six exceptions, provide that they may be sued. An omission to so provide in the legislation pertaining to Regional Agricultural Corporations is significant. To argue that they may be sued without such provision would mean that the specific provisions in the statutes creating various governmental agencies, authorizing suit against them, are mere surplusage.

Administrative construction of the statute may be of persuasive force. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L. Ed. 796; United States v. Madigan, 300 U.S. 500, 57 S.Ct. 566, 81 L.Ed. 767. That Regional Agricultural Credit Corporations were recognized as governmental agencies by the Administrative Department of the Government is evidenced by the fact, already noted, that they were granted government rates on telegrams; their employees were required to subscribe to the standard form of oath required of officers of the United States; they were granted franking privileges, relieved of capital stock tax, and were clearly recognized as and construed to be governmental agencies. The restrictions with reference to their deposit of funds and the covering of their unused capital into the Treasury of the United States further indicate the governmental character of these agencies. They were government agencies, loaning government funds.

It is argued that the activities of these agencies were such as to take them into the realm of private business and divorce them of their sovereign character. But the loaning of money to assist in the

agricultural development of the country, or to save the agriculture of the country from loss or disaster, and the collection of the money so loaned, would not, we think, have the effect of converting the Government into a trading partnership, nor put it into private business. In Langer v. United States, 8 Cir., 76 F.2d 817, it was argued that the Reconstruction Finance Corporation was a private business, rather than a government agency. In the course of the opinion in that case we said (page 819):

"The question to be determined is whether Congress has created a corporate entity to act as a part of the government as a political department, or whether it has adopted a corporate form to be separate from and not to be considered as a part of the government."

We there held that the Reconstruction Finance Corporation was a government agency.

See, also, North Dakota-Montana Wheat Growers' Ass'n v. United States, supra.

The authorities relied upon by plaintiff are readily distinguishable. Many of them deal with corporations organized under the general incorporation laws of a state or of the District of Columbia. The very laws under which they are incorporated mark them as private corporations and make them amenable to suit. In addition, it is to be noted that in practically all of the incorporations involved in the cases relied upon by appellant immunity from suit is expressly waived. The case of Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 42 S.Ct. 386, 66 L. Ed. 762, is strongly relied upon. The Emergency Fleet Corporation was organized under the general incorporation laws of the District of Columbia as a private corporation. Those laws, of course, provided that corporations might be sued. That corporation was authorized to carry on a private business for profit, and others than the Government might own its stock. In the course of the opinion, it is, among other things, said (page 387):

"At that time the Emergency Fleet Corporation had only the powers given by the incorporation laws of the District. * * * The Shipping Act contemplated a corporation in which private persons might be stockholders and which was to be formed like any business corporation under the laws of the District, with capacity to sue and be sued. * * * The fact that the corporation was formed under the general laws of the District of Columbia is persuasive, even standing alone, that it was expected to contract and to stand suit in its own person * * *."

A number of the other cases cited involved, in the final analysis, the question of the character of the Emergency Fleet Corporation. For example, in United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368, which is cited by appellant, the question involved was whether the employment of Strang by the Emergency Fleet Corporation made him an agent of the Government. The court held that as the corporation was a private corporation, Strang was not an agency of the Government. The court said (page 166):

"Its inspectors were not appointed by the President, nor by any officer designated by Congress."

It is to be noted that Regionals are to be managed by officers and employees appointed by the Farm Credit Administration. As Regional is a governmental agency, and Congress has not seen fit to make it amenable to suit by waiving its immunity, we conclude that the court committed no error in sustaining the demurrers to plaintiff's petition, and the judgment appealed from is therefore affirmed.